Marks Tea *et al.* Appellants, *vs.* William Millen *et al.* Appellees.

*Opinion filed February 20, 1913—Rehearing denied April 2, 1913.*

1. Wills—*general rule where devisee dies before the testator.* The general rule is, that a devise which fails to take effect by reason of the death of the devisee before the death of the testator will lapse and the estate devised will become intestate property.

2. Same—*devise will not lapse if testator has provided for substitution of devisees.* In the absence of a statute to the contrary, a devise will lapse if there is no one in existence at the death of the testator capable of taking the devise, but if the testator has provided for the substitution of another devisee in place of the first one the substituted devisee will take and there will be no lapse.

3. Same—*when lapse is prevented by section 11 of Statute of Descent.* Under section 11 of the Statute of Descent a lapse is prevented in case of the death before the testator of a devisee who is a child or grandchild of the testator, provided there is issue of the child or grandchild in existence at the testator's death and no provision has been made in the will for the contingency.

4. Same—*it is presumed that qualifying words were intended to have some meaning.* In construing a will it is presumed that every word qualifying another word is intended by the testator to have some meaning, and the ordinary meaning of the qualifying word is to be given to it unless otherwise required by the context.

5. Same—*words "natural heirs" mean heirs by nature and do not include collaterals.* The word "natural" means produced in the course of nature, and when used to qualify the word "heirs" means such heirs as are born to a person in the course of nature, as distinguished from collaterals, who are heirs by virtue of legislative provisions. (*Ryan v. Allen,* 120 Ill. 648, distinguished.)

6. Same—*only method of disinheriting heir is to give the property to someone else.* Heirs cannot be disinherited merely by a declaration that they shall not have anything or no more than a certain sum, unless the property is given to someone else, as no intention, however strong, to disinherit an heir can be given effect as to intestate property.

7. Same—*when a devise lapses and becomes intestate property.* Where a devise is to the son of the testator or his "natural heirs," and the son dies before the testator, leaving no issue, the devise lapses in the absence of any other provision for such contingency,

and the estate descends as intestate property to the general heirs of the testator, including those whom he has attempted to disinherit by providing that they shall have five dollars each and no other share or claim in the estate.

FARMER, J., dissenting.

APPEAL from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding.

P. SHUTTS, and O. R. LARAWAY, for appellants.

BARR, McNAUGHTON & BARR, and KELLY & ORR, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Will county dismissed for want of equity the bill filed by appellants against appellees for a partition of land in said county, in which the appellants claimed interests as heirs-at-law of Alexander Millen and the appellees claimed title as the heirs-at-law of Alexander Millen, Jr. This appeal was taken from the decree.

Alexander Millen made his will on January 9, 1895, and first gave to his wife, Margaret Millen, a life estate in all his real and personal property. Then came this provision: "After her demise, it is my wish that my real and personal property be divided between my children or their natural heirs as follows, to-wit." By the next clause of the will he gave to his daughters, Mary Ann and Elizabeth Honorah Millen, twenty-one acres of land. The next clause was as follows: "The remaining thirty-nine (39) acres of my farm—be the east part thereof, shall be the property of my sons Alexander and William Millen, share and share alike." He next gave his farm stock, farming machinery and grain to his four children, and the last clause was as follows: "It is my desire that my daughters, Mary Ann and Elizabeth Honorah Millen, shall, within one year

257 — 40

after the death of my wife, or after their share of my estate shall be in their ownership and possession pay to Marks Tea and Ada Tea, children of my daughter Margaret; and to Emma Ann Hibner, child of my daughter Sarah—the sum of five oo dollars each;—and said Marks Tea, Ada Tea and Emma Ann Hibner shall have no other share of my estate or claim upon the same." When the will was made the testator had four children,—Mary, aged twenty-nine, Alexander, Jr., aged twenty-seven, William, aged twenty-five, and Elizabeth aged thirteen,—and none of them were married. He also had three grandchildren,— Marks Tea, aged thirteen, Ada Tea, aged eleven, and Emma Ann Hibner, aged eleven. They are the appellants and the children of two deceased daughters of the testator. The son Alexander Millen, Jr., died on November 7, 1896, leaving no children and having never been married, and the father, Alexander Millen, the testator, died on May 5, 1908.

The chancellor, in construing the will, found the intention of the testator as expressed therein to be, that if his son Alexander Millen, Jr., did not survive him, the real estate devised to said son should go to the heirs-at-law of the devisee, excepting the complainants, Marks Tea, Ada Tea and Emma Ann Hibner, who were to have no interest therein. Whether this construction was correct is questioned by the assignment of errors.

The general rule is, that a devise which fails to take effect by reason of the death of the devisee before the testator will lapse and the estate devised will become intestate estate. In the absence of a statute, if there is no one in existence at the death of the testator capable of taking a devise it will lapse, but if the testator has provided for the substitution of another devisee in place of the first one the substituted devisee will take the estate devised and there will be no lapse. In the case of a child or grandchild a lapse may also be prevented by the provision of section 11 of the act in regard to descent of property, provided there

is issue of the child or grandchild at the death of the testator. That section declares that whenever a devisee or legatee in any last will and testament, being a child or grandchild of the testator, shall die before such testator and no provision shall be made for such contingency, the issue, if any there be, of such devisee or legatee shall take the estate devised or bequeathed as the devisee or legatee would have done had he survived the testator, and if there be no such issue at the time of the death of such testator the estate disposed of by such devise or legacy shall be considered and treated in all respects as intestate estate. The devise to Alexander Millen, Jr., was a devise to a son of the testator, and the question to be decided is whether there was a provision made for the contingency of his death in the lifetime of the testator. If there was, there would, regardless of any statute, be no lapse, the purpose of the statute being merely to prevent a lapse where the devisee is a child or grandchild. (*Frail* v. *Carstairs,* 187 Ill. 310; *Magnuson* v. *Magnuson,* 197 id. 496; *Rudolph* v. *Rudolph,* 207 id. 266; *Pirrung* v. *Pirrung,* 228 id. 441.) If no provision was made for the contingency, the statute did not save the devise to issue of the devisee, because there was no issue. Whether provision was made for the contingency of Alexander Millen, Jr., dying before the testator depends upon the meaning to be given to the words "natural heirs," in the general provision that after the death of the widow the real and personal property was to be divided between the testator's children or their natural heirs in the manner subsequently specified in the will. If those words meant heirs generally, collateral as well as lineal, and implied no distinction between heirs produced by nature and collaterals, who are made heirs by statute, then, by regarding the word "or" as providing for substitution, it might be said that provision was made for the contingency. In *Ebey* v. *Adams,* 135 Ill. 80, the words "or their heirs" were held to create an alternative devise and the word "or" to indicate

substitution, making the words words of purchase and not of limitation, and we are asked to apply the same rule here. It would make no difference, however, if we did apply that rule, unless the words "natural heirs" include collaterals, and we do not think that is so. It is presumed that every word qualifying another word is intended by the testator to have some meaning, and its natural meaning is to be given to it unless the context requires a different meaning. If the qualifying word "natural" is to be given any effect whatever, it limits to some extent the class of persons upon whom the law would cast the estate as heirs. The word "natural" means produced in the course of nature, and when used to qualify the word "heirs" we think it means such heirs as are born to a person in the course of nature as distinguished from collaterals, who are heirs by virtue of legislative provisions,—and this was the view taken in *Smith* v. *Pendall,* 19 Conn. 107, and *Millar* v. *Churchill,* 78 N. C. 372. No one answers to the description of natural heirs except issue or children. The devisee Alexander Millen, Jr., died leaving no natural heir but only persons who would be heirs by virtue of the statutes of descent. In *Ryan* v. *Allen,* 120 Ill. 648, it was held that the words "nearest heirs" meant heirs-at-law and did not take the devise out of the rule in *Shelley's case,* but that was because the word "nearest" did not limit, qualify or vary the meaning of the word "heirs." There was no one capable of taking the devise at the death of the testator. No provision having been made for the contingency of the death of the devisee, the lapse was not prevented by the statute.

It has been settled by several decisions of this court that heirs cannot be disinherited merely by a declaration that they shall not have anything or no more than a certain sum. No matter how strong the intention of the testator may be to disinherit an heir, the intention cannot be given any effect as to intestate property, and the only method of disinheriting him is to give the property to some

one else. (*Lawrence* v. *Smith,* 163 Ill. 149; *Parsons* v. *Millar,* 189 id. 107; *Ames* v. *Holmes,* 190 id. 561.) We therefore need not consider the probable intention of the testator as to the disposition of intestate property. In our opinion the land devised to Alexander Millen, Jr., is intestate estate and passes by the Statute of Descent to all the heirs-at-law of Alexander Millen, the testator, including the complainants.

The decree is reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE FARMER, dissenting:

I know of no rule of law requiring any particular interpretation of or limitation to be placed upon the words "natural heirs," regardless of what the intention of the testator may have been as expressed in his will. If from the whole instrument it appears that the testator means children by the use of that term, that interpretation should be given it; but if he meant all persons whose relation to the devisee was such that under the laws of descent they would inherit, then there is no rule of law prohibiting that construction being given the words used. "Heirs" has a well known technical meaning, and if there be no words in any part of the will to control, the term must be interpreted according to its strict and technical import. (*Rawson* v. *Rawson,* 52 Ill. 62; *Ryan* v. *Allen,* 120 id. 648.) Authorities are abundant to the effect that the technical meaning of the word "heir" or "heirs" in a will will be given it, unless it appears from the will that the testator intended the word should be given a different interpretation. The only basis for the claim that the words used in the will before us were not intended to be given their technical meaning is, that the word "heirs" is qualified by the preceding word "natural." The use of that word does not by any means render it certain that the testator meant children of a devisee, and if there were no other provision

in a will indicating the sense in which the words are used, it would be a matter of some doubt whether it was the intention of the testator to limit those who would take in case of the death of a devisee, to particular heirs of the devisee, namely, children. In *Ryan* v. *Allen, supra,* this court held "nearest heirs" had no different meaning from heirs general.

Reading the words used by the testator in connection with the fourth clause of the will, it seems clear that he did not intend appellants to have any part of his estate except the provision made for them in the fourth clause. This intention would be defeated by construing the words "natural heirs" to mean children. This construction we are not bound to give these words by any rule of law, and as such a construction would defeat the intention of the testator, it is, in my judgment, unauthorized by the rules governing the construction of wills. As I interpret the will, the intention of the testator was that in case of the death of a devisee before the devisee's estate took effect the property devised should go to the heirs of the devisee, and this meant collateral heirs in case the devisee left no children. This provided for the contingency of the death of a devisee before the death of the testator. But by the fourth clause of the will appellants were excluded, and the testator intended the property to go to the heirs generally of a deceased devisee, except appellants, to whom he had given all he intended them to have of his estate. All others who answer the description of heirs of the deceased devisee, Alexander Millen, Jr., would in my opinion take the property devised him according to the laws of descent.