# .CASES

ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

(No. 11709.—Judgment reversed.)
GEORGE S. WALKER, Trustee, Defendant in Error, *vs.* ELIZ-
ABETH FRANCES WALKER *et al.* Plaintiffs in Error.

*Opinion filed February 20, 1918—Rehearing denied April 4, 1918.*

1. WILLS—*court may consider surrounding circumstances in as-certaining intention of testator.* The intention of the testator is found by construing the words in the will in the light of the testator's circumstances and surroundings, and evidence of the condition of the testator's mind when he executed the will, whether he lived with his family, and the state of his family and of his property, is admissible.

2. SAME—*general rule as to when a legacy to be paid through a trustee is contingent.* Where a legacy is to be paid through a trustee, the general rule is that where there are no words importing a gift other than to the trustee to divide or pay at a future time the legacy is contingent, but if the payment is postponed for the convenience of the funds of the estate and not for reasons personal to the legatee or devisee it should be held vested.

3. SAME—*when legacies to be paid by trustees are contingent.* Where the primary purpose of the testator in creating a trust in all of his personal estate is to give the legatees one-half of their shares at the end of a five-year period of management by his trustees and the other half at the end of a ten-year period of such man-

agement the legacies are contingent and do not vest until the time arrives for the respective five and ten-year distributions.

4. SAME—*meaning of word "heir" at common law.* The word "heir" or the phrase "heir-at-law" means, at common law, that person who succeeds to the real estate in case of intestacy.

5. SAME—*testator's intention as to use of word "heir" is to be ascertained from entire will.* The testator's intention must be the controlling factor as to the meaning to be given to the word "heir" or the phrase "heir-at-law," and this intention is to be ascertained from a consideration of the will in all of its parts, bearing in mind the scope and plan of the testator as expressed by the whole will.

6. SAME—*when husband of deceased daughter will take bequest over to her "heirs-at-law."* In a testamentary disposition of personal property to a married daughter of the testator, with a bequest over, in case of her death, to her "heirs-at-law according to the Statute of Descent in the State of Illinois," the daughter's husband must be held to be included in the term "heirs-at-law" even though the daughter left a child surviving. (*Gauch* v. *St. Louis Mutual Life Ins. Co.* 88 Ill. 251, distinguished.)

7. SAME—*testator is presumed to know the law.* A testator is presumed to know the law and to make his will in view of existing statutes, including the words of substitution used in the Statute of Descent.

8. SAME—*a reasonable construction that will avoid intestacy should be adopted.* It is presumed that one who makes a will intends to dispose of his entire estate by that means and not to die intestate as to any part of his property, and any reasonable construction that will avoid intestacy as to a part of the property should be adopted.

9. SAME—*when legacy does not lapse.* If the testator has provided for the substitution of another legatee in place of the first one, in case of the latter's death the legacy does not lapse on the happening of that event.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

SCOTT, BANCROFT, MARTIN & STEPHENS, and LESTER L. FALK, (JOHN E. MACLEISH, and LELAND K. NEEVES, of counsel,) for plaintiff in error Frederick Whiting.

GEORGE C. OTTO, for plaintiff in error the Chicago Title and Trust Company.

GERALD TURNBULL, for plaintiff in error Charles Foley.

GEORGE H. KRIETE, for defendant in error.

RUBY KOENIG ELLIS, for Irene Rabell; WILLIAM H. GRUVER, for Edwin Walker, Jr.; and FELSENTHAL & WILSON, for Clara May McDonald and Mary E. Walker.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Edwin Walker died testate April 27, 1910. His will was duly admitted to probate and thereafter a bill was filed by the testamentary trustees in the circuit court of Cook county for its construction. A decree was entered in said court construing the will, and from that decree a writ of error was sued out to the Appellate Court for the First District, and counsel in that court insisted that the decree was wrong on three points: First, in holding that certain interests under the will were contingent and not vested; second, in holding that Frederick Whiting was an "heir" under the provisions of the will; and third, in holding that the children and husband of Hettie Foley took the share of a son of said Hettie Foley who died before the testator. The Appellate Court affirmed the decree in holding that the interests in question were contingent and not vested but reversed the decree on the other two points. A judgment was entered accordingly in the Appellate Court, and the case has been brought here on petition for *certiorari*.

The estate disposed of by said will is all personal property, amounting to over $250,000. After making certain specific bequests to the widow as to certain household goods and furniture, etc., and $6000 in money, the will provides in the second clause of article 2: "I give, devise and be-

queath all the rest, residue and remainder of my estate * * *
to Dr. William Dougall * * * and to my son George S.
Walker, * * * to have and to hold the same in trust,
nevertheless, for the following purposes, viz:" It then pro-
vides for the payment by the trustees of all debts, and di-
rects that there be paid to the widow out of the income, in
monthly payments, $1800 per year, and that a payment of
$12 a month be made to Mary Redmond, a long-time ser-
vant of the family. The will then contains the following
provisions:

"3d. My said trustees shall keep my estate coming into
their hands or possession (except as aforesaid) together for
the period of five years from the date of my death, during
which time they shall manage and control the same and
every part thereof, and conduct any business, at their dis-
cretion, for the benefit of my estate. They shall have full
power to make investments in interest-bearing securities or
income-producing property and to change such investments
when made; to buy, sell and convey property at such time
or times as they may think best; to collect all interest and
income and generally to do what in their judgment will be
the best for my estate; and at the end of five years my
said trustees shall make provision for the payments, as
aforesaid, to my said wife, Elizabeth Frances, and to the
said Mary Redmond, out of the income and profit from a
fund which they shall set aside and invest for that purpose,
and after making such provision and setting aside the said
fund, and after setting aside the sum of seventy-five hun-
dred ($7500) dollars for the three children of my deceased
daughter, Hettie Foley, my said trustees shall make an es-
timate of the value of my remaining estate and divide the
same into six equal portions, and pay and deliver one-half
of one of said six portions to my daughter Catherine Dou-
gall, wife of Dr. Dougall, if she be living at the time, and
if she be not living at that time, then to pay and deliver the
same to her child or children surviving at the time of my

death, in equal portions; to pay one-half of another of said six portions to my daughter Minnie Whiting, wife of Frederick Whiting, if she be living at the time, and if she be dead, then to pay said one-half that would go to her to her child or children surviving at the time of my death, in equal portions; to pay one-half of $15,000, being the. sum of $7500, to Cecil Foley, Earl Foley and Reginald Foley, the now surviving children of my deceased daughter, Hettie, who was the wife of Charles Foley, to be divided equally between them; to pay one-half of another of said six portions to my son Edwin Walker, Jr., if he be living at the time, and if he be dead, then to pay the same to his child or children surviving at the time of my death, share and share alike; to pay one-half of another of said six portions to my son John H. Walker, if he be living at the time, and if he be dead, then to pay the same to his child or children surviving at the time of my death, share and share alike; to pay one-half of another of said six portions to my son Charles Walker, if he be living at the time, and if he be dead, then to pay the same to his child or children surviving at the time of my death, share and share alike; to pay one-half of the remaining one of the six portions to my son George S. Walker, if he be living at the time, and if he be dead, then to pay the same to his child or children surviving at the time of my death, share and share alike.

"4th. All of the balance of my estate after making provisions for payments aforesaid and making the payments hereinbefore mentioned, as herein directed, shall be kept together and managed by my said trustees in such manner as in their opinion will be for the benefit of my estate until the expiration of the period of ten years from the date of my death, at which time, (the expiration of ten years from the date of my death,) if my wife, Elizabeth Frances, and the said Mary Redmond, be living, so that the provision for payment to them or either of them shall be kept up, as hereinbefore provided, then my said trustees, after making

provision for the payments to them, or to the survivor of them if one be dead, so as to keep up the monthly payments so long as either of them be living, and after taking out $7500 for the three children aforesaid of my deceased daughter, Hettie Foley, then my said trustees shall divide my estate that is then remaining (except the amount invested in making provision for the monthly payments and except the sum taken out as aforesaid) into six equal parts, and shall pay, convey and deliver one of said six parts to my said daughter Catherine, wife of said Dr. Dougall; and pay, convey and deliver another of said six parts to my said daughter Minnie, wife of said Frederick Whiting; and pay, convey and deliver to Cecil, Earl and Reginald Foley, the now surviving children of my said deceased daughter, Hettie, the said $7500, share and share alike; and pay, convey and deliver to my son Edwin Walker, Jr., another of said six parts; and pay, convey and deliver to my said son John H. Walker another of said six parts; and pay, convey and deliver to my son Charles Walker another of said six parts; and pay, convey and deliver to my son George S. Walker the last remaining of said six parts; and if at the expiration of said ten years my said daughter Catherine or my said daughter Minnie, or any of the said children of my said deceased daughter, Hettie, or my said son Edwin Walker, Jr., or my said son John H. Walker, or my said son Charles Walker, or my said son George S. Walker, be dead and should die without having received his or her part of my estate, as aforesaid, then my said trustees shall pay, convey and deliver the share that would otherwise go to such deceased person to his or her heirs-at-law according to the Statute of Descent in the State of Illinois.

"5th. Upon the death of my wife, Elizabeth Frances, the payment of one hundred and fifty ($150) dollars per month to her shall cease, and upon the death of Mary Redmond the payment of twelve ($12) dollars per month to her, as hereinbefore provided, shall cease, and after the

death of both of them, if it be after the expiration of said ten years after the date of my death, my said trustees shall divide all of the residue and remainder in their hands or under their control, and that part of my estate heretofore set apart and held for the purpose of producing the money to make the payments of said monthly sums out of the income and profit thereof, and all then remaining income, profit, property and increases, into six equal parts, and said six parts shall be then by said trustees paid, conveyed and delivered, one to my said daughter Catherine Dougall, if she be living, and if not, then to her heirs-at-law; one to my said daughter Minnie Whiting, if she be living, and if not, then to her heirs-at-law; one to my said son Edwin Walker, Jr., if he be living, and if not, then to his heirs-at-law; one to my said son John H. Walker, if he be living, and if not, then to his heirs-at-law; one to my said son Charles Walker, if he be living, and if not, then to his heirs-at-law; and the remaining one-sixth to my said son George S. Walker, if he be living, and if not, then to his heirs-at-law. The share going to the heirs-at-law of any of those last named shall be divided among such heirs according to the Statute of Descent in the State of Illinois."

The will then gives full authority to the trustees to convey any portion of the estate, to borrow money, if necessary, and give security therefor on the property in their hands for said period of ten years. It provides that if any beneficiaries shall oppose the carrying out of the will they shall have nothing whatever from the estate. It then appointed William Dougall and George S. Walker as executors, without bond, and revoked all former wills.

Since the filing of this bill Dr. William Dougall has died, his death having been suggested of record, and the case is being conducted by the surviving trustee, George S. Walker. Since the death of the testator, his son John H. Walker has been declared a spendthrift and the Chicago Title and Trust Company has been appointed his conser-

vator. The same three questions are raised here as were decided by the Appellate Court.

Counsel for the conservator of John H. Walker argues that the equitable title of all of the legatees under the will vested in the legatees at the testator's death, while the decree found that these interests were contingent until paid, as provided in the will, in five and ten years, and the judgment of the Appellate Court affirms the decree in that regard. As the question whether the interests of the legatees are vested or contingent affects, directly or indirectly, the other two questions raised here, that question will be decided first.

All counsel for the interested parties argue that in order to reach the correct result the intention of the testator as expressed in the will should control, and that is the law. The most important rule in the exposition of wills, to which all other rules must bend, is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the settled rules of law. (*Smith* v. *Bell,* 31 U. S. 68; *Bradsby* v. *Wallace,* 202 Ill. 239; *O'Hare* v. *Johnston,* 273 id. 458.) "All rules of construction yield to the intention of the testator plainly expressed." (*Fifer* v. *Allen,* 228 Ill. 507.) This intention is found by construing the words employed by the testator in the will itself, in the light of his circumstances and surroundings. While it is the intention, as shown in the will itself, that is sought, yet the court in construing a will is not bound to shut its eyes to the state of facts under which the document was made. "The court is entitled to hear such extrinsic evidence of the surrounding circumstances as will put it in the place of the testator." (Page on Wills, sec. 817.) This court has said that in construing a will, evidence of the condition of the testator's mind when he executed the will, whether he lived with his family, the state of his family and of his property, is admissible. (*Wallace* v. *Foxwell,* 250 Ill. 616; *Abrahams* v. *Sanders,* 274 id. 452.) No fixed

and settled rules of law are raised by counsel in this case that could in any way defeat the intention of the testator as expressed in the will, construed in the light of the surrounding circumstances under which it was executed.

The question as to the interests being vested or contingent, as stated in the brief of counsel for the conservator, is "(*a*) whether the language of clauses 4 and 5 of article 2 of said will is such as to make the bequests there given to the sons and daughters of the testator living at his death contingent each upon the survival of such son or daughter for ten years after the death of the testator; and (*b*) such as to support a bequest over in the event of the death of such son or daughter within such period of ten years; or (2) whether the equitable title to the legacies there mentioned vested in the said sons and daughters upon the death of the testator, with the right of possession alone postponed. It is contended that the equitable title vested at the death of the testator." This court has held that the general rule is, in the construction of wills, that "where there are no words importing a gift, other than to the executors or trustees to divide or pay at a future time, the legacy is contingent, still, if the payment is postponed for the convenience of the funds of the estate and not for reasons personal to the legatee or devisee it should be held vested." *Armstrong* v. *Barber,* 239 Ill. 389; *Knight* v. *Pottgieser,* 176 id. 368; *Carter* v. *Carter,* 234 id. 507.

Counsel for the conservator argues earnestly that the payments provided for were postponed for the convenience of the funds of the estate. He sets out in the brief in this connection a careful analysis of the condition and state of the testator's property and argues that most of the good assets were in the form of bonds in the Illinois Pure Aluminum Company and certain other securities, many of which certificates were deposited with various banks and trust companies as collateral for the payment of indebtedness, and that although there was sufficient property to make an es-

tate of $250,000 or more, the realization of its value required careful handling on the part of the executors and trustees for a considerable period. He also argues that the will states in several places that the property shall be managed and securities may be sold and investments made as in the judgment of the trustees appears best "for the benefit of my estate," and that, reading the entire will together, it should be held that the payments were postponed for the interest of the estate and not for reasons personal to the legatees. Counsel for the surviving trustee, who also represents some of the other beneficiaries, contends, on the other hand, that such postponement was for reasons personal to the legatees and not for the benefit of the estate or for the purpose of letting in any subordinate estate, and hence there was no vesting in any of the beneficiaries at the testator's death. He further argues that the estate was so large that the testator would have small concern regarding the postponing of distribution for the benefit of the funds, and that from a consideration of the circumstances surrounding the testator at the time of his death and the condition of his property, together with the fact that he selected his youngest son and a son-in-law as trustees, and the fact that one of the Foley grandchildren was adjudged insane before the testator's death, it is clear that it was his intention to postpone the distribution for reasons personal to the legatees.

The decree of the circuit court found that "the said will vested the title to the estate, up to the time of the distribution provided in said will to be made, in the trustees named in said will or the survivor or successor of them, except as to such portions of said estate as were theretofore from time to time to be paid and distributed under said will by said trustees or the survivor of them." The judgment of the Appellate Court affirmed this portion of the decree of the circuit court, holding, in effect, that the distribution was postponed for reasons personal to the legatees and not for the benefit of the estate. Of course, this question must

be decided, as heretofore stated, by ascertaining what the testator's intention was on this point, and the intention sought should be his general or primary intention. Technical rules will not be permitted to defeat such intention. In interpreting wills we ought to follow those rules of construction that are most in harmony with the genius and laws of this country and the manners and customs of its people. "We ought rather to be guided by those that would effectually do justice, and not by such as would give an arbitrary and technical meaning to words never understood or contemplated by the testator; that may defeat all the objects of his beneficence, as manifested by the last solemn act of his life in disposing of his property to those he may deem most worthy of his bounty." *Webbe* v. *Webbe*, 234 Ill. 442.

From a reading and the wording of the will, alone, all counsel find a basis for their argument on this question, especially as to the postponement of the distribution for the first five-year period, but having in mind the condition of the testator's property at his death, as well as the family circumstances and that one of the grandchildren was at that time insane, it seems hardly probable, in view of the provisions in the will, that the testator would provide that half of his estate should be paid out at the end of five years and still direct that the other half should be held for another five-year period for the benefit of the property itself. It is plain from a reading of the will that the testator wished his trustees to have a reasonable time in which to get the assets in good shape and to realize the most that was possible on the various securities that he owned at the time of his death, yet his primary purpose and scheme manifestly contemplated that after the benefit of the management by the trustees during the first five-year period each of the beneficiaries might have half of their respective shares to manage for themselves, and then, even if from improvidence or unfortunate investments they lost that half, there

would still be another payment coming to them at the end of the ten-year period. Moreover, we are inclined to agree with the argument of counsel for the surviving trustee that it is not necessary, in order to decide whether this is a vested or contingent interest, to decide only whether the postponement was for the benefit of the estate or for reasons personal to the legatees.

Considering all of the provisions of the will in the light of the circumstances under which it was made and the condition of the family and of the property of the testator at that time, we think the wording of the will shows that the testator intended that the legacy should not vest until the respective five and ten-year periods of distribution had arrived. The last part of clause 4 of article 2 of the will provides that if the son John H. Walker be dead at the expiration of said ten years the trustees shall pay the share that would otherwise go to him to his heirs, and similar language is used with reference to the shares of the other children. Having in mind the various rules of construction urged by different counsel, we reach the opinion from a study of the will in the light of surrounding circumstances, that the testator intended to give a contingent, equitable interest to John H. Walker, conditioned upon his being alive at the expiration of said respective five and ten-year periods. The legal estate until that time was in the trustees or the survivor of them, who were directed, under the will, to make certain disposition of the income. While the legal title vested in the trustees at the death of the testator, the equitable title did not vest in the various beneficiaries until the expiration of the five or ten-year period, respectively. This being so, the decree of the circuit court holding that these interests were contingent and not vested was correct, and the judgment of the Appellate Court upon that point should be affirmed.

Minnie Whiting, one of the daughters of the testator, died intestate June 14, 1912, some two years after her

father, leaving her surviving her husband, Frederick Whiting, and one daughter, now Mrs. Irene D. Rabell. It is argued by counsel for Frederick Whiting that the decree of the circuit court was correct in holding that he was an "heir" of his wife as to the part of the estate that was to be distributed at the end of the ten-year period, although Frederick Whiting makes no claim to any portion of the estate that was directed to be distributed at the end of the first five-year period. The findings of the decree of the circuit court in this regard were in accordance with the arguments of counsel for Frederick Whiting. Counsel for the trustee insists that the judgment of the Appellate Court on this point is correct in holding that Whiting was not an "heir" of his wife under the provisions of the will.

The word "heir" or the phrase "heir-at-law" meant at common law that person who succeeds to the real estate in case of intestacy. (2 Jarman on Wills,—6th Am. ed.—*905.) The same author says (p. *923): "With respect to the personalty, too, it is often doubtful whether the testator employs the term 'heir' in its strict and proper acceptation, or in a more lax sense as descriptive of the person or persons appointed by law to succeed to property of this description. Where the gift to the heirs is by way of substitution, the latter construction generally prevails." "It has frequently been held by this court that the word 'heirs' in a will does not necessarily have a fixed meaning. It may mean children. If it may mean children, it may also, where there are no children, mean some other one class of heirs, (not including all the heirs,) if the context of the entire will plainly shows such to have been the purpose of the testator. * * * The technical meaning of the word is the one which *prima facie* should prevail, yet such meaning will not be given effect to the extent of defeating an obvious general intention of the testator. (*Blackmore* v. *Blackmore,* 187 Ill. 102; *Johnson* v. *Askey,* 190 id. 58.) 'Heirs' and 'heirs-at-law' are in a legal sense the same." (*Smith* v.

*Winsor,* 239 Ill. 567.) "The term 'heir' has a very different signification at common law from what it has in those States and countries which have adopted the civil law. In the latter the term applies to all persons who are called to the succession, whether by the act of the party or by operation of law. The person who is created universal successor by a will is called the testamentary heir, and the next of kin by blood is, in cases of intestacy, called the heir-at-law or heir by intestacy." (1 Brown on Civil Law, 344; see, also, Story on Conflict of Laws, 508; *Meadowcroft* v. *Winnebago County,* 181 Ill. 504.) By the general rule in this country in the disposition of realty, in the absence of a contrary intention expressed in the will, the term "heirs-at-law," "heirs," or the like, must be construed in its strict and primal meaning, signifying those entitled by law to inherit by descent the real estate of a deceased person; and the same rule seems to apply quite generally as to the disposition of personal property unless there is express reference in the will to the personal property being distributed according to the statute on distributions in force in that jurisdiction. *Black* v. *Jones,* 264 Ill. 548; 38 Ann. Cas. 1173, and note.

It is obvious that under these authorities the intention of the testator must be the controlling factor as to the meaning to be given to the word "heir" or the phrase "heir-at-law," for it is fundamental that in construing wills the constant effort of the court is to give effect to the true intention and meaning of the testator as expressed by the language used in his will, and this is to be ascertained from a consideration of the will in all of its parts and details, bearing in mind the scope and plan of the testator as expressed by the whole will. (*Black* v. *Jones, supra.*) In *Rawson* v. *Rawson,* 52 Ill. 62, where a bequest was made to be "distributed to my heirs-at-law according to the statute of Illinois," it is said in referring to certain authorities (p. 67): "These cases are in point and go to show that such a direc-

tion as that contained in this will is equivalent to a devise or bequest to those who would take the estate under our statute of distributions if the estate was intestate." To the same effect see *Richards* v. *Miller,* 62 Ill. 417, where it is held that the surviving spouse was an heir under the Statute of Descent. In *Kelley* v. *Vigas,* 112 Ill. 242, in discussing a somewhat similar question this court said (p. 245): "To ascertain who are included in the class designated as 'heirs-at-law,' reference must be had to the statute of this State regulating descents and distribution of estates. * * * It will be seen the testator by his will disposed of the remainder of his estate to his 'heirs-at-law' but made no devise of it to anyone by name, other than designating them as a class. The word 'heir,' it is said, when uncontrolled by the context, designates the person appointed by law to succeed to the estate in question, as in case of intestacy, and so the authorities seem to hold. Who are heirs of a deceased person is determined and declared by statute, and the quantity each shall take as heir is also fixed."

These authorities, in effect, support the holding that Frederick Whiting, as the surviving husband of Minnie Whiting, was included as an "heir-at-law according to the Statute of Descent in the State of Illinois," even though Minnie Whiting left a child surviving. This is also the rule in other jurisdictions. *Lesieur's Estate,* 205 Pa. 119; *Garrett's Estate,* 249 id. 249; *International Trust Co.* v. *Williams,* 183 Mass. 173; *Throp* v. *Throp,* 69 N. J. Eq. 530; *Doody* v. *Higgins,* 69 Eng. Rep. 976; *Jacobs* v. *Jacobs,* 51 id. 895; *Hamilton* v. *Mills,* 54 id. 601; see, also, cases in note to *Black* v. *Jones,* 38 Ann. Cas. *supra.*

If the testator intended only children of his daughter Minnie Whiting to receive the property that would have gone to her if she were alive at the end of the ten-year period, why did he not word the will as to this distribution at the end of the ten-year period the same as he did concerning the distribution of her share at the end of the

five-year period? As to the five-year distribution the will states that if Minnie Whiting be not living at the time "then to pay said one-half that would go to her to her child or children surviving at the time of my death, in equal portions," while as to the ten-year distribution it provides, "and if at the expiration of said ten years my said daughter Minnie be dead and should die without having received * * * her part of my estate, as aforesaid, then my said trustees shall pay, convey and deliver the share that would otherwise go to such deceased person to his or her heirs-at-law according to the Statute of Descent in the State of Illinois." If the will be construed to mean that the "heirs-at-law" do not include the husband of Minnie Whiting, then, if the property is to be distributed "according to the Statute of Descent in the State of Illinois," it only provides for the distribution of two-thirds of the Minnie Whiting share, because under the Statute of Descent the children of Minnie Whiting would only take two-thirds and the surviving husband would take the other one-third. To so hold would be, it seems to us, to put an unreasonable and unnatural construction upon the wording of the will and would leave the words of the will, "according to the Statute of Descent in the State of Illinois," without any real meaning. The testator is presumed to know the law and to make his will in view of existing statutes. (*Rudolph* v. *Rudolph,* 207 Ill. 266.) It must be presumed that the testator knew the use of the words of substitution in referring to the Statute of Descent in this State. The construction contended for by counsel for the surviving trustee would render a part of the will meaningless. Where one construction of a will renders a portion of it meaningless and another gives effect to all the words used the latter should be adopted. (*Wardner* v. *Baptist Memorial Board,* 232 Ill. 606.) Furthermore, it is a universal presumption that one who makes a will intends to dispose of his entire estate by that means and not to die intestate as to any part of his property.

Any reasonable construction that would avoid that conclusion of intestacy as to a part of the property should be adopted. *Craw* v. *Craw*, 210 Ill. 246; *Eyer* v. *Williamson*, 256 id. 540.

Counsel for the trustee argues at length that from the will it must be concluded that the testator intended to have his property all go to his direct descendants or blood relations. We think this argument is without merit, because under the provisions of the will if Minnie Whiting had died without leaving any children or descendants of a child surviving, her husband, Frederick Whiting, would necessarily share in her estate, and other incidents of a similar character would arise under other provisions of the will if certain people did not survive at the time of the distribution of the estate.

Counsel for the trustee relies strongly on the reasoning and conclusion of this court in *Gauch* v. *St. Louis Mutual Life Ins. Co.* 88 Ill. 251, as to the wording of a life insurance policy which provided that the money paid under the policy should be made payable to the legal heirs or assigns. That case is clearly distinguishable in the difference between the wording of the policy and that of this will on the point here under consideration. There was no reference in that insurance policy to the legal heirs or assigns "according to the Statute of Descent in this State," while the will here does contain such a provision. If this will had simply provided that Minnie Whiting's share should be distributed at the end of the ten-year period, if she was not living, to her "heirs-at-law," and stopped there, then it might be argued with more force that the testator intended the property to go to her heirs who were of his blood and that the husband would not be included as one of such heirs. But where there is an express reference, as here, to the statute of distribution, and the husband would take under such statute of distribution, by the great weight of authority in this and other jurisdictions, and by

sound reasoning, the husband must be held to be included in the term "heirs-at-law." The Appellate Court wrongly held that he was not included.

Cecil Foley, a grandchild of the testator, died intestate twenty-two days prior to the testator's death, without issue, leaving him surviving as his only heirs-at-law his father and two brothers. The decree of the circuit court found that the father and the two brothers were entitled to the share that Cecil would have been entitled to had he been living at the end of the ten-year period, while the Appellate Court held that the legacy to him lapsed, and that the father and brothers were not, as·his heirs-at-law, entitled to the legacy that would have gone to him had he been living at the end of the ten-year period.

At common law a devise or legacy always lapses where the devisee or legatee dies before the death of the testator. To prevent the lapsing of a devise to a child or grandchild of the testator, section 11 of our Statute of Descent (Hurd's Stat. 1916, p. 981,) was enacted. The Appellate Court based its holding on the ground that Cecil Foley did not leave any descendants. The question whether this legacy lapsed does not depend upon section 11 of the Statute of Descent. On this question, as on the other two heretofore discussed, the intention of the testator must control. The wording of the will with relation to the Foleys as to the distribution at the end of the ten-year period is substantially the same as the wording as to the distribution of the Minnie Whiting legacy, but the wording as to the distribution at the end of the five-year period is different as to the Foley children from that concerning the legacy to Minnie Whiting, there being no reference of any kind as to what should be done at the end of the five-year period as to the Foley children's legacy if either of them did not survive until the end of that period, while, as we have seen, the provision as to the legacy of Minnie Whiting was, that in case of her death before the end of the five-year period

it would be distributed to her child or ·children living at the time of the testator's death. As we understand this record, there was no distribution of any part of the Foley legacy to anyone at the end of the five-year period. The will provides as to the ten-year period that the trustees shall pay, "convey and deliver to Cecil, Earl and Reginald Foley, the now surviving children of my said deceased daughter, Hettie, the said $7500, share and share alike," and further provides that "if at the expiration of said ten years * * * any of the said children of my deceased daughter, Hettie, * * * be dead and should die without having received his or her part of my estate, as aforesaid, then my said trustees shall pay, convey and deliver the share that would otherwise go to such deceased person to his or her heirs-at-law according to the Statute of Descent in the State of Illinois." Section 11 of the Statute of Descent was passed to prevent the lapse of legacies, but that section, in our judgment, does not control as to the legacy of Cecil Foley. The wording of said section plainly shows that if the will provides that the legacy shall not lapse that section will not control. Statutes for the prevention of lapses are intended, not to defeat the will but to supplement it, and not to control if it be inconsistent with the will. (*Rudolph* v. *Rudolph, supra.*) If the testator has provided for the substitution of another devisee in place of the first one, there would, regardless of any statute, be no lapse. (*Tea* v. *Millen,* 257 Ill. 624.) As no part of the estate had been paid over to Cecil, the son of Hettie Foley, at the end of the five-year period, therefore the share that would otherwise have gone to him under the will should rightly be paid to his heirs according to the Statute of Descent in this State,—that is, to his two brothers and his father. In determining the intention of the testator the court should specially have, on this point, recourse to the relation of the parties. It certainly is not to be presumed that the Foley grandchild whose mental

condition prevented him from caring for himself is to be barred from receiving this legacy. It is manifest from a reading of the entire will that the testator intended to leave $15,000 to the children of his daughter Hettie Foley. Under the wording as to the distribution at the end of the ten-year period, we think it is obvious that he intended the distribution to include the surviving heirs, according to the Statute of Descent in the State of Illinois, of any of said Foley children who should die at any time, whether before or after his death.

We have not thought it necessary to review at length or in detail all of the decisions that have been cited by the various counsel. We have only referred to those that we thought had the strongest bearing on the questions here involved. It has been repeatedly said by this court that while cases on wills may serve to guide us with respect to the general rules of construction, unless a case cited be in every respect directly in point and agrees in every circumstance with that under consideration it will have little or no weight with the courts, who always look upon the intention of the testator as the polar star to direct them in the construction of wills. *Boyd* v. *Strahan,* 36 Ill. 355; *Orr* v. *Yates,* 209 id. 222; *Armstrong* v. *Barber, supra; O'Hare* v. *Johnston, supra.*

Having in mind the testator's general scheme for the distribution of his estate, the fact that all of his property was personalty, and the various rules of construction cited and relied upon by counsel for the various parties to this litigation, we have reached the conclusion that the decree of the circuit court was right on all three points involved, and that the Appellate Court wrongly held that Frederick Whiting was not the "heir" of his wife in reference to the distribution at the end of the ten-year period and that the legacy to Cecil Foley lapsed at his death.

The judgment of the Appellate Court will therefore be reversed.                        *Judgment reversed.*