(No. 59755.—

*In re* ESTATE OF EDWARD CANCIK, Deceased (Thomas S. Chuhak, Guardian *Ad Litem*, Appellee, v. First National Bank of Cicero, Ex'r, *et al.* (Charles E. Cancik, Appellant)).

*Opinion filed March 22, 1985.*

12

Allen S. Greene, of Greene, Jones & Brisske, of Wheaton, for appellant Charles E. Cancik.

Thomas S. Chuhak, appellee, of Chicago, *pro se* (William J. O'Connor, of counsel).

JUSTICE WARD delivered the opinion of the court:

This appeal involves the construction of the will of Edward C. Cancik. The testator died on January 18, 1982, and his will was admitted to probate in the circuit court of Cook County on March 5, 1982. On February 9, 1983, the court ordered that the portion of the estate undisposed of by the will be divided among the testator's heirs, which included 12 cousins who live in Czechoslovakia and who were not named in the will. Charles E. Cancik (Charles), who lives in Phoenix, Arizona, also is a

cousin of the testator. He argued unsuccessfully that he should take the entire undisposed portion of the estate, since he was named in the will as a beneficiary to take the testator's personal effects and that the will set out the testator's intent to disinherit all heirs except him. The appellate court affirmed the order of the circuit court. (121 Ill. App. 3d 113.) We granted Charles leave to appeal under Rule 315 (87 Ill. 2d R. 315).

During his lifetime, the testator had a family mausoleum constructed in Woodlawn Cemetery in Forest Park and contracted with the cemetery association to provide perpetual care and maintenance of the mausoleum. The testator paid $4,150 to the cemetery association in partial payment; the money was placed in a trust fund to provide the desired care and maintenance. The testator executed his will in September 1978. The first three clauses of the will were general clauses, not relevant here, which revoked former wills and pertained to funeral arrangements. "Item IV" of the will provided:

> "I give, devise and bequeath all my personal effects, such as my automobile and furniture and furnishings in my home ***, to my beloved cousin, Charles E. Cancik of Phoenix, Arizona."

Item V was a residuary clause which left the residue of the estate to the First National Bank of Cicero as trustee of a testamentary trust, the income of which was to be used for the perpetual care of the mausoleum. Item VI appointed the First National Bank of Cicero as executor of the will. Finally, item VII provided:

> "I have intentionally omitted the names of any of my relatives from this my last will and testament for reasons I deem good and sufficient, with the exception of my aforesaid cousin, Charles E. Cancik."

Upon the testator's death, his net estate was valued in excess of $200,000. After the will was admitted to probate, Charles filed a complaint in equity, declaring

that the income from the trust greatly exceeded the amount necessary to carry out its purpose and asking the court to declare a resulting trust of the surplus, which he asked to be distributed to him as the testator's only heir at law. (It appears that he was unaware of the Czechoslovakian cousins.) This suit was transferred to the probate division and consolidated with the pending probate proceedings.

The court appointed Thomas S. Chuhak (Chuhak) as guardian *ad litem*, to represent any unknown heirs of the testator. Chuhak filed a petition to construe the testator's will, also stating that the principal and income of the trust grossly exceeded the amount necessary to accomplish the trust's purpose and asking that the court declare a resulting trust in the amount over what was necessary to provide perpetual care for the mausoleum. Chuhak, however, argued that the resulting trust should be declared in favor of the testator's heirs, including the 12 heirs found by Chuhak who were in Czechoslovakia.

Charles then amended his original complaint and alleged that a resulting trust should be declared as to the excess trust income, but asked that it should be distributed to him alone, since it was the testator's intent to exclude all other heirs from taking from the estate. The Woodlawn Cemetery Association advised that it would provide perpetual care and maintenance of the mausoleum, upon receipt of a further payment of $10,850.

The circuit court stated that the residuary clause of the testator's will provided an inexhaustible residuum far in excess of the $10,850 necessary to fulfill the trust purpose, which the court declared to be against public policy. The court held that the amount of the estate in excess of the sum needed to fulfill the trust purpose was, in effect, a lapsed legacy which was to be treated as intestate property and distributed to the testator's heirs at law under the statute of descent and distribu-

tion. (Ill. Rev. Stat. 1983, ch. 110½, par. 24—1 *et seq.*) The court held further that item VII of the will did not operate to disinherit the heirs of the testator and also denied Charles' claim that he was entitled to receive the entire undisposed residue of the testator's estate. As stated, the appellate court affirmed.

Charles and Chuhak both argue that a resulting trust should be impressed upon the excess residue, but Charles contends that the excess should pass to him alone. He claims that, by distributing the surplus as intestate property to the Czechoslovakian heirs as well as to him, the circuit and appellate courts have defeated the intention of the testator as expressed in item VII of the will. He also argues that the language in item VII expressed an intent to disinherit all other heirs, and was sufficient to imply a gift by the testator to him of the residuary estate.

Where estate property is placed in an express testamentary trust, and it is subsequently discovered that the entire trust estate is not required to accomplish the trust purpose, a resulting trust arises as to the amount of trust property over what is needed to achieve the trust purpose. (5 A. Scott, Trusts sec. 430.2 (3d ed. 1967); G. Bogert, Trusts & Trustees sec. 469 (rev. 2d ed. 1977).) The surplus estate results to the creator of the trust, *i.e.* the settlor, or to his estate, unless he has manifested a contrary intention. (See *First Trust & Savings Bank v. Olson* (1933), 353 Ill. 206, 214.) If the settlor is deceased, the terms of the will control the distribution of the excess estate. However, if the will fails to specifically provide for the distribution of the excess property, it passes by intestate succession. *Glaser v. Chicago Title & Trust Co.* (1946), 393 Ill. 447, 459-60.

The residuary clause here did not expressly provide for the disposition of any surplus estate. Charles argues that, though there was no express clause disposing of

the excess estate, the testator's intent, as expressed in item VII of his will, was to disinherit all other heirs and this, by implication, created a gift to Charles of the undisposed estate.

When construing a will a court must ascertain and give effect to the intention of the testator as expressed in the will. (*Rosenthal v. First National Bank* (1968), 40 Ill. 2d 266; *Weber v. Hawkins* (1964), 30 Ill. 2d 278.) There is a presumption that the testator intended to dispose of his entire estate by will and leave no part as intestate property. (*Schroeder v. Benz* (1956), 9 Ill. 2d 589.) Although there is a presumption against intestacy, when a testator fails to provide for a contingency which most likely would have been provided for if he had considered it, the court cannot guess or speculate as to what provision he would have made had he not overlooked it. *Weir v. Leafgreen* (1962), 26 Ill. 2d 406, 411; *Scott v. Crumbaugh* (1943), 383 Ill. 144, 151.

Contrary to Charles' assertion, item VII of the will cannot be said to create, by implication, a gift by the testator to Charles of the undisposed estate. A gift by implication will be sustained only where there is no reasonable doubt as to the testator's intent to make the gift. (*Bradshaw v. Lewis* (1973), 54 Ill. 2d 304.) Probabilities as to the testator's intent cannot be weighed and considered. *Bond v. Moore* (1908), 236 Ill. 576; *Schuyler v. Zwiep* (1976), 42 Ill. App. 3d 91; see W. Page, Wills sec. 30.18 (1961).

The testator did not provide for the disposition of a possible surplus upon the fulfillment of the testamentary trust's purpose. Judging from item V of his will, his principal testamentary concern seemed to be the care and upkeep of the mausoleum. We cannot say that it can be implied without reasonable doubt that the testator intended to make a gift of the remaining estate, or surplus, to Charles.

The heirs here were not disinherited by the statement in the will that they were intentionally omitted from the testator's will. (See *Tilton v. Tilton* (1943), 382 Ill. 426, 430-31; *Lawrence v. Smith* (1896), 163 Ill. 149, 166.) When a testator provides that certain indicated heirs are not to take from his estate and the will disposes of less than all of the estate, the provision excluding the heirs is without effect as to the property which is not disposed of by the will. (See *Ames v. Holmes* (1901), 190 Ill. 561, 564; *Parsons v. Miller* (1901), 189 Ill. 107, 112.) In *Tea v. Millen* (1913), 257 Ill. 624, this court stated:

> "It has been settled by several decisions of this court that heirs cannot be disinherited merely by a declaration that they shall not have anything \*\*\*. No matter how strong the intention of the testator may be to disinherit an heir, the intention cannot be given any effect as to intestate property, and the only method of disinheriting him is to give the property to someone else." (257 Ill. 624, 628-29.)

See also W. Page, Wills sec. 30.17 (1961).

Here, the testator did not provide for the disposition of the surplus which existed upon the accomplishment of the purpose of the testamentary trust, and, thus, his will did not dispose of his entire estate. As there was no express provision for the distribution of the surplus, a resulting trust arose and the surplus property passed as intestate property to the heirs at law despite the intentional omission of them from the will. (*Strohm v. McMullen* (1949), 404 Ill. 453, 459-60). As Bogert, in Trusts and Trustees, puts it:

> "The settlor cannot prevent the resulting trust from arising as to the excess in favor of his heirs or next of kin by providing that they shall not take in that way or shall not secure any benefits under his will." G. Bogert, Trusts & Trustees sec. 469, at 827 (rev. 2d ed. 1977).

The circuit and appellate courts correctly held that

item VII of the will did not operate to disinherit the Czechoslovakian heirs as to the undisposed estate of the testator.

For the reasons given, the judgments of the circuit and appellate courts are affirmed.

*Judgments affirmed.*