599 N.E.2d 184 (1992)
233 Ill. App.3d 599
174 Ill.Dec. 638
In re ESTATE OF Leeta SMITH, Deceased (Shaunn R. Smith et al., Petitioners-Appellees,
v.
Don Coons et al., Respondents-Appellants.
No. 4-92-0177.
Appellate Court of Illinois, Fourth District.
September 3, 1992.
N. Ned Leiken, Leiken and Leiken, Minonk, for respondents-appellants.
Fellheimer, Travers & Engelman, Ltd., Pontiac (Ronald K. Fellheimer and Garth S. Seiple, of Counsel), for petitioners-appellees.
Justice McCULLOUGH delivered the opinion of the court:
This appeal by Don Coons and Glenn Smith, as executors of the estate of Leeta Smith, deceased, involves the construction of a will by the circuit court of Livingston County. The circuit court found that the estate included items of personal property for which the will did not direct distribution. The court ordered that this personal property was to pass intestate to the decedent's surviving heirs, Sharlotte Keenan, Sharlene Smith, and Shaunn Smith. The estate appeals from the order of the circuit court directing release of that property.
The only issue raised on appeal is whether the trial court misconstrued the will. We affirm.
The subject will, which does not have a paragraph fifth or sixth, executed on December 17, 1990, states as follows:
"I, Leeta A. Smith, of Flanagan, County of Livingston and State of Illinois, being of sound and disposing mind and memory, do hereby make, publish and declare this to be my Last Will and Testament, hereby expressly revoking any and all former wills by me made:
FIRST: It is my will that my Executor pay all of my just debts and claims against my estate, including my funeral expenses, as soon after my decease as *185 may conveniently be done. I further provide that all Inheritance Taxes and Federal Estate Taxes that may be due by reason of my death shall be paid out of my estate.
SECOND: I give and bequeath all the furniture and household goods located in the mobile home in which I reside in Flanagan, Illinois, as follows:
(A) To Shirley, the surviving widow of my deceased son, Dean, I give the oak cupboard in the living room, built in 1976. I do not include the contents of said cupboard in this bequest.
(B) To Phyllis Smith, daughter of my niece, Joan M. Smith, I give the antique oak china closet in the dining area of my mobile home in Flanagan, Illinois. I do not include the contents of said china closet in this bequest.
(C) I give all the rest of my furniture and household goods as follows:
1. To my brother, Robert F. Tucker, an undivided 1/5 share.
2. To my brother, Melvin L. Tucker, an undivided 1/5 share.
3. To my sister, Jane Coons, an undivided 1/5 share.
4. To the children of my deceased brother, Ivan Tucker, an undivided 1/5 share.
5. To the children of my deceased sister, Edna Roach, an undivided 1/5 share.
Should any of my named legatees in Paragraph Second (C) predecease me, then I direct that the share of said deceased legatee go, per stirpes, to his descendants.
THIRD: I give and bequeath to my nephew and niece, Glen A. Smith and Joan M. Smith, my interest as Seller under an unrecorded Agreement for Warranty Deed, dated November 1, 1980 as modified by an Agreement dated June 5, 1987, wherein the following described land was sold to Glen A. Smith and Joan M. Smith, to wit:
The South Half (S ½) of the Northeast Quarter (NE ¼) of the Northwest Quarter (NW ¼) of Section Seven (7), and the Southeast Quarter (SE ¼) of the Northwest Quarter (NW ¼) of Section Seven (7), all in Township Twenty-eight (28) North, Range Three (3) East of the Third Principal Meridian, situated in the County of Livingston, in the State of Illinois,
to be theirs absolutely, share and share alike.
FOURTH: I give and devise all the rest of my farmland as follows:
(A) To my brother, Robert F. Tucker, an undivided 1/5 share.
(B) To my brother, Melvin L. Tucker, an undivided 1/5 share.
(C) To my sister, Jane Coons, an undivided 1/5 share.
(D) To the children of my deceased brother, Ivan Tucker, an undivided 1/5 share.
(E) To the children of my deceased sister, Edna Roach, an undivided 1/5 share.
Should any of my named beneficiaries in Paragraph Sixth [sic] predecease me, then I direct that the share of said deceased beneficiary go, per stirpes, to his descendants.
SEVENTH [sic]: I have made no further provision in my Will for Shirley, the surviving widow of my late son, Dean C. Smith, or for her children, adopted by my said son, for the reason that I feel that my son adequately provided for his family under his Will.
LASTLY: I appoint my nephews, Glen A. Smith and Don Coons, Co-Executors of this my Last Will and Testament, to serve without bond. However, if my said nephews, Glen A. Smith and Don Coons should predecease me, or fail or refuse to qualify as such Executor, then I name N. Ned Leiken, Executor of this my Last Will and Testament."
The testatrix signed each page of this three-page document. The signatures of the two witnesses appear on each page following the attestation clause on page three.
The order of heirship declared the decedent's only heirs to be Sharlotte Keenan, Sharlene Smith, and Shaunn Smith, the decedent's adopted grandchildren and the adopted children of decedent's deceased son, Dean C. Smith. The inventory filed in *186 the estate disclosed the following items of personal property which were not specifically devised: (1) beans on hand, $11,621; (2) an automobile with no separate value listed (it was lumped with furnishings and household goods with a total value of $10,000); (3) $96,534 on deposit at the Flanagan State Bank; and (4) $57,967 on deposit at the Minonk State Bank.
It is the executors' position that an ambiguity is demonstrated on the face of the will and that the missing paragraphs fifth and sixth, which includes a residuary clause, should be supplied by reference to a prior will of decedent. The executors suggest this is the appropriate method of correcting the "scrivener's error." In refusing to adopt the reasoning of the executors, the trial judge sagaciously stated:
"The execution of a Will is an important occasion, it is a sober occasion. It is for that reason that for hundreds of years we have had certain formalities that have been required in order to make a valid Will. Those formalities are required to insure that what someone says in a written instrument such as a Will is what the person intends. Those formalities are met here, and I have to give consideration to the fact that the decedent complied with those formalities in making her Last Will and Testament.
If I were to permit what the Executors desire here, I would be permitting a substantial rewriting of the Will. I don't believe it can be accurately stated that this would be simply a clarification of an ambiguity. This would be a major insertion that would substantially change the testamentary scheme of the instrument that has been admitted."
If there is a scrivener's error in the will, it might be the misreference to paragraphs sixth and seventh instead of fourth and fifth. Using the executors' logic, if the testatrix, after publishing the will and revoking all prior wills, included only paragraph seventh in the document, the trial court could, nevertheless, supply all arguably missing paragraphs by reference to a prior will. Such a rewriting of the will would defeat the express intent of the testatrix to revoke all prior wills.
The executors argue the "ambiguity" is also demonstrated by paragraph seventh, which stated no further provision in the will would be made for her son's widow or their adopted children. The executors contend that extrinsic evidence of the testatrix' intent should have been considered to resolve this ambiguity.
There is no ambiguity. Read alone, paragraph seventh does not evidence an intent to disinherit as the executors suggest. Had there been a residuary clause, the insertion of which the executors now promote, the adopted grandchildren would take nothing from the estate. But paragraph seventh does not, in and of itself, evidence an intent to deprive the adopted grandchildren of property which was not specifically referred to in the will.
In construing a will, the intention of the testatrix is to be determined from the will itself. (In re Estate of Brach (1986), 147 Ill.App.3d 819, 821, 101 Ill.Dec. 337, 338, 498 N.E.2d 661, 662.) "[N]ormally a will is considered to be an integrated written document and a court's examination of the instrument will not extend beyond the `four corners' of the instrument in interpreting its meaning." (King v. Travis (1988), 170 Ill.App.3d 1036, 1041, 120 Ill.Dec. 792, 796, 524 N.E.2d 974, 978.) If some ambiguity exists, then the court may consider extrinsic evidence relating to the circumstances surrounding the making of the will. (King, 170 Ill.App.3d at 1041, 120 Ill.Dec. at 796, 524 N.E.2d at 978.) However, the courts will not create an ambiguity where none exists. An example of an ambiguity on the face of the will is presented in the case of In re Estate of Shaw (1989), 182 Ill.App.3d 847, 131 Ill.Dec. 268, 538 N.E.2d 643, wherein the preamble of the will limited the distribution to Florida property only, but the will also included a residuary clause referring to the residue of the estate. A question arose as to whether the residuary clause pertained to Illinois property. Such an ambiguity does not exist in the text of the subject will. Here, only the reference to paragraph numbers provides the executors *187 with the ammunition to argue there is something omitted. There is a significant difference between the construction of a will and reformation of the will. Reformation of the will should not be undertaken under the guise of judicial interpretation of the will. 3A S. Sjostrom & C. Hallinan, Horner Probate Practice & Estates § 2158 (4th ed. 1982).
The executors rely heavily on the presumption that the testatrix intended to dispose of her entire estate by will and to leave no part thereof to pass by intestacy. (In re Estate of Cancik (1985), 106 Ill.2d 11, 17, 87 Ill.Dec. 36, 39, 476 N.E.2d 738, 741.) However, this presumption is particularly applicable where the will contains a residuary clause. (Shaw, 182 Ill.App.3d at 850, 131 Ill.Dec. at 270, 538 N.E.2d at 645; Brach, 147 Ill.App.3d at 821, 101 Ill.Dec. at 338, 498 N.E.2d at 662; 3A S. Sjostrom & C. Hallinan, Horner Probate Practice & Estates § 2115 (4th ed. 1982).) Cancik and Schroeder v. Benz (1956), 9 Ill.2d 589, 138 N.E.2d 496, the case cited in Cancik, both involved wills with a residuary clause. A construction of a will which avoids partial intestacy "should be adopted if it is reasonably possible to do so." (3A S. Sjostrom & C. Hallinan, Horner Probate Practice & Estates § 2115, at 51 (4th ed. 1982).) In this case, it is unreasonable to force such a construction on the will.
In Cancik, the undisposed part of the estate passed by intestacy. There, the testator's will created a testamentary trust into which the residue of the estate was placed. The income from the trust was to be used for the perpetual care of the family mausoleum. However, the residuary estate was in excess of what was needed to fulfill the trust purpose. Since the testator did not provide for the disposition of a possible surplus, the court refused to construe the will to imply that the testator intended to make a gift of the remaining estate to the cousin who was bequeathed all personal effects since to do so would disinherit other heirs. (Cancik, 106 Ill.2d at 14-18, 87 Ill.Dec. at 37-39, 476 N.E.2d at 739-41.) Unless the intent to disinherit is clearly expressed or results from necessary implication, there is a presumption that heirs were not intended to be disinherited. (Shaw, 182 Ill.App.3d at 850, 131 Ill.Dec. at 270, 538 N.E.2d at 645.) In Cancik, the Illinois Supreme Court stated:
"The heirs here were not disinherited by the statement in the will that they were intentionally omitted from the testator's will. (See Tilton v. Tilton (1943), 382 Ill. 426, 430-31 [47 N.E.2d 454]; Lawrence v. Smith (1896), 163 Ill. 149, 166 [45 N.E. 259]). When a testator provides that certain indicated heirs are not to take from his estate and the will disposes of less than all of the estate, the provision excluding the heirs is without effect as to the property which is not disposed of by the will. (See Ames v. Holmes (1901), 190 Ill. 561, 564 [60 N.E. 858]; Parsons v. Miller [Millar] (1901), 189 Ill. 107, 112 [59 N.E. 606].) In Tea v. Millen (1913), 257 Ill. 624 [101 N.E. 209], this court stated:
`It has been settled by several decisions of this court that heirs cannot be disinherited merely by a declaration that they shall not have anything * * *. No matter how strong the intention of the testator may be to disinherit an heir, the intention cannot be given any effect as to intestate property, and the only method of disinheriting him is to give the property to someone else.' (257 Ill. 624, 628-29 [101 N.E. 209].)"
Cancik, 106 Ill.2d at 18, 87 Ill.Dec. at 39, 476 N.E.2d at 741.
In the case at bar, the result must be the same. The will does not expressly distribute all of the property, and there is no necessary implication that some persons named in the will to receive other property should also take those items not specifically identified in the will. Devises or bequests by implication are not favored, must rest on some expression in the will, and cannot be inferred from silence or result from conjecture. A devise or bequest by implication will only be found where the testator's intention to make the gift is so strong that no contrary intention can be supposed. (Shea v. Lyons (1964), 47 Ill. App.2d 187, 191, 198 N.E.2d 151, 154; 3A S. Sjostrom & C. Hallinan, Horner Probate Practice & Estates §§ 2115, 2115.1 (4th ed. *188 1982).) This is not such a case. Moreover, the executors do not argue that a gift by implication is made. Instead, they request that two paragraphs from a revoked will be inserted into the subject will, and as has already been noted, such an action by a court to rewrite the will of the testatrix is clearly impermissible.
Accordingly, the judgment of the circuit court of Livingston County is affirmed.
Affirmed.
GREEN, P.J., and STEIGMANN, J., concur.