CHARLES BLACKMORE

*v.*

LINCOLN BLACKMORE *et al.*

*Opinion filed October 19, 1900.*

1. WILLS—*natural construction of words is preferred.* The natural construction of words used in a will will be adopted unless there is such an impracticability of so construing them as to authorize their rejection, or such uncertainty that no effect can be given to them in that sense.

2. SAME—*will construed.* A devise to the testator's son of a number of acres of land at a certain value per acre, the amount to be divided in equal parts among the testator's ten children, the devisee to have his share and pay annually to the other children what the cash rent for the land would be until they are all paid off, will be construed as giving to each child a tenth part of the stipulated value of the land and the right to receive a tenth part of the rent annually as compensation for the use of his interest in the land, until such time as he should receive his share of the estate.

APPEAL from the Circuit Court of Woodford county; the Hon. JOHN H. MOFFETT, Judge, presiding.

This is a bill in chancery filed in the circuit court of Woodford county by the appellant, Charles Blackmore, against the appellees, Lincoln Blackmore and Jessie Blackmore, his wife, alleging that his father, John Blackmore, departed this life on the 16th day of June, 1884; that he left him surviving, as his widow, Elizabeth Blackmore, and as his heirs, ten children; that at the time of his death and at the time of making his will John Blackmore was the owner of eighty acres of land known as the "Keley farm," one hundred and twenty acres known as the "Morgan farm" and one hundred and twenty acres known as the "old homestead," being in all three hundred and twenty acres; that he had aided some of his children by advancing money or property to them; that the testator, prior to his death, made his last will and testament, dated June 17, 1882, which will is as follows:

"*In the name of God:* I, John Blackmore, of the Town of Panola, in the County of Woodford, and State of Illinois, being of sound mind, memory and understanding, do make, publish and declare, this my last Will and Testament:

"1. I devise and bequeath all my Estate, Real and Personal property, to my dear wife, Elizabeth Blackmore, after her death the estate shall be divided as follows:

"2. My son Albert shall have Eighty acres in section Twenty-three, known as the Keley farm, said land shall be valued at Thirty-six Dollars per acre, the amount to be divided in equal parts among my sons & daughters. Albert to have *is* share in said farm & he shall pay *annuly* to my sons and daughters what the cash rent would be on the said farm until *the* are all paid *of*. Albert need not pay Charles, or Grant, as *the* will have to pay Albert the difference in the value of *there* farms.

"3. My son Charles shall have One Hundred & twenty acres in section twenty-six, known as the Morgan Farm, said land shall be valued at thirty-eight dollars per acre. Charles shall pay annually to my sons and daughters on the same condition as Albert.

"4. My son Grant shall have One Hundred & twenty acres in section twenty-six; this is the old homestead. Said land shall be valued at forty-five dollars per acre. Grant shall pay annually to my sons & daughters on the same condition as Albert.

"5. None of the above estate shall be mortgaged nor sold until my sons & daughters are all paid off. My executors shall divide personal property. My *to* youngest children shall have the household furniture.

"6. Those of my sons and daughters who have had or may have money from me, the same shall be deducted from *there* share of estate.

"7. I appoint my sons James Blackmore & Albert Black-more, executors of this will.

"Witness my hand & seal this June 17, 1882.

JOHN BLACKMORE.    [Seal.]

"Signed, sealed, published and declared by the testator in the presence of each of us, as his last Will and Testament, and we, in his presence, and in the presence of each other, & at his request, have signed our names as subscribing witnesses to such execution.

H. SOLZGERGER,<br>ISAAC ZINSER."

The bill further alleges that said will was duly admitted to probate in the county court of Woodford county, Illinois, on the 31st day of July, 1884, and that his estate has been settled; that the widow of the testator survived her husband and died upon the first day of July, 1885; that after her death all the property of which the testator died seized and which was mentioned in said will was rented and one-tenth of the rents paid to each of the ten children of the testator until the amount of the rent received by them, respectively, equaled one-tenth of the value of the farms mentioned in the second, third and fourth clauses of said will, devised to Albert, Charles and Grant, respectively, at the price put upon them by the testator; that Charles Blackmore, the complainant in this suit, paid to each of his brothers and sisters the one-tenth share of what the cash rent would be on the Morgan farm, devised to him, and that each of his brothers and sisters except the defendant Lincoln Blackmore have received in annual payments, as rent, a sum in the aggregate equal to the full one-tenth part of what said land would come to at the price ($38 per acre) placed upon the same by the testator, and upon such amount being received by them they severally quit-claimed to the complainant all right, title and interest in said land and released any claim they might have thereon by virtue of said will; that the said Lincoln Blackmore was paid the full value of one-tenth of said land at said price, except the sum of $108.52, which amount, prior to the commencement of this suit, the complainant tendered to him and requested that he execute a quit-claim deed releasing any claim he might have upon said land, but this said Lincoln Blackmore refused to do, and that the complainant thereupon filed his bill in this cause offering to pay to the said Lincoln Blackmore the said sum of money, and asking to have the said Lincoln Blackmore release any claim or interest in said land he might have under and by virtue of said will.

The bill having been amended, the defendants filed a general demurrer thereto, which was sustained, and the complainant having elected to stand by his bill, a decree was entered dismissing the bill and for costs, from which decree the complainant has perfected this appeal.

ELLWOOD, MEEK & LOVETT, for appellant.

R. S. MCILDUFF, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This case turns entirely upon the construction to be given to the will of John Blackmore, deceased. If complainant's construction of said will, and that under which all his brothers and sisters, except the defendant Lincoln Blackmore, have acted in releasing their claims, is correct, then the demurrer should have been overruled and the defendant Lincoln Blackmore be decreed to be enti-·tled to only said sum of $108.52, and upon payment of that sum to said Lincoln Blackmore he should be decreed to release the lien created in his favor by said will. On the other hand, if the construction placed upon said will by the court below is correct, then the said defendant Lincoln Blackmore is entitled to said sum of $108.52; also to $456, being one-tenth the valuation of said one hundred and twenty acres of land at $38 per acre; and also to one-tenth of the rental value of said land from the time the last money was paid up to the time said $456 is fully paid.

What the testator intended by said will is to be gathered from the will and the circumstances under which it was made. The will is inartificially drawn. It is evident that it was drawn by an illiterate person and one unlearned in the law and even unacquainted with the correct use of the English language. In the second clause of the will the word "is" is used for "his;" "the" for "they" in two different places; "of" for "off" and "there" for "their;" while in the fifth clause the word "to" is used for the

word "two." In the sixth clause "there" is again used for "their." The third clause of the will is the one under which the complainant gets his right to the land in question, and to determine the meaning of it the second clause has to be taken in connection with it. When it comes to a construction of the fourth clause, the second clause has to be taken in connection with it. The third clause does not specifically refer to the second clause, but it speaks of the condition imposed upon Albert, which condition is found in the second clause, devising eighty acres of land to Albert. The second clause of the will is as follows: "My son Albert shall have Eighty acres in section Twenty-three, known as the Keley farm, said land shall be valued at Thirty-six Dollars per acre, the amount to be divided in equal parts among my sons & daughters. Albert to have *is* share in said farm & he shall pay *annuly* to my sons and daughters what the cash rent would be on the said farm until *the* are all paid *of.* Albert need not pay Charles, or Grant, as *the* will have to pay Albert the difference in the value of *there* farms." The third clause, being the clause under which the complainant gets his right, reads as follows: "My son Charles shall have One Hundred & twenty acres in section twenty-six, known as the Morgan farm, said land shall be valued at thirty-eight dollars per acre. Charles shall pay annually to my sons and daughters on the same condition as Albert." It will. be seen that the condition referred to and which was imposed upon Albert, and which is found in the second clause of said will, is as follows: "Albert to have *is* share in said farm & he shall pay *annuly* to my sons and daughters what the cash rent would be on the said farm until *the* are all paid *of.*" This condition is to be, we take it then, read into said third clause and treated the same as though forming a part of it. It will be seen that the following language found after the price per acre in the second clause of said will, namely, "the amount to be divided in equal parts among my sons & daughters," is not

found in the third clause of said will; but that it is to be treated as though it were we make no question, for we see that in the last two lines of the second clause of said will the testator provided that "Albert need not pay Charles or Grant as *the* will have to pay Albert the difference in the value of *there* farms.".

We think the idea of equality pervades this entire will and each and every clause of it; that an equal division of the value fixed upon the farms by the testator among his children was the evident intent of the testator. If this were his intention then that intention must prevail. It is further evident from the will that the testator designed to keep the three farms devised to Albert, Charles and Grant in the Blackmore family. To effect such intention and avoid a sale he devised his land to his sons, Albert, Charles and Grant, and fixed a valuation thereon to govern his heirs in the settlement of his estate. The farm devised to Albert was valued at $36 per acre, and that devised to Charles at $38 per acre and that devised to Grant at $45 per acre, the three farms upon such valuation aggregating the sum of $12,840. This amount, he directs, "shall be divided in equal parts among my sons & daughters." The time of such division is fixed by the last clause of the first paragraph of the will after the death of his wife. As further evidence that the testator had determined upon an equal division of his estate between his children he provides by paragraph 6: "Those of my sons and daughters who have had or may have money from me, the same shall be deducted from *there* share of estate."

The difficulty arises over the following language found in the second paragraph of the will: "Albert to have *is* share in said farm & he shall pay *annuly* to my sons and daughters what the cash rent would be on said farm until *the* are all paid *of*." At the time the will was made, Albert, Charles and Grant were minors. It was evident to the testator that his children, other than such sons,

might not come into the possession of their share of the estate for some time, should he and his wife die soon, by reason of the inability of Albert, Charles and Grant to pay them their portion thereof. We think such provision was inserted in the will with a view to cover such contingency, and was to be the payment to them of rent for the use of and in lieu of interest on their shares of the estate until the same should be paid to them. Such construction is not strained or unnatural, but is in harmony with the idea of equality which pervades the will. The construction of a will depends upon the intention of the testator, to be ascertained from a full view of everything contained within "the four corners of the instrument." The natural construction of the words will be adopted unless there is such an impracticability of so construing them as to authorize their rejection, or such uncertainty that no effect can be given to them in that sense. (*Taubenhan* v. *Dunz*, 125 Ill. 524.) A technical construction of words and phrases, although *prima facie* the one which should prevail, will not be carried to the extent of defeating any obvious general intention of the testator, since wills are often prepared by those wholly unacquainted with the precise technical force of legal formulas, and who, from a consciousness of such deficiency, often exert themselves to drag in such phrases wherever they suppose they would probably have been adopted by an experienced draughtsman. , 1 Redfield on Wills, (3d ed.) 435, 436; 29 Am. & Eng. Ency. of Law, 345; *Markillie* v. *Ragland*, 77 Ill. 98; *Brownfield* v. *Wilson*, 78 id. 467,

The fifth paragraph of the will shows that the testator intended to, and did, charge each of his three farms with the share of each of his children, save the particular one to whom a particular farm was devised. To hold that the annual rent as paid was a payment on the principal of the share of Lincoln Blackmore, would be to hold that the only interest he took by the will of his father in his father's estate was the right to receive one-tenth

of the rent thereof until such rent equaled the value thereof fixed thereon by the will, while Charles Blackmore would receive the same amount as rent and the Morgan farm at the end of such period. This construction would entirely destroy the equality contemplated by the will.

From a consideration of all the parts of this will we are satisfied the will gives to Lincoln Blackmore the one equal tenth part of the value of the Morgan farm as fixed by the will; that he has a lien thereon to secure the payment of such share, and is entitled to receive for the use of such share the one-tenth part of "what the cash rent" thereof will be until such share is paid.

We find no error in this decree, and the same will therefore be affirmed.

*Decree affirmed.*