ELLEN V. WEBBE *et al.* Appellants, *vs.* SAMUEL E. WEBBE *et al.* Appellees.

*Opinion filed April 23, 1908—Rehearing denied June 9, 1908.*

1. WILLS—*construction giving an estate of inheritance to first taker is preferred.* Courts of Illinois are not disposed to so construe a will as to tie up property, but will adopt such a construction of a will as gives an estate of inheritance to the first taker, if it can be done without violating some settled rule of law.

2. SAME—*what indicates that devisees are to take same interest in land as in personal property.* The fact that the testator includes real estate and personal property in the same sentence of the residuary clause is a circumstance indicating that he intended the residuary devisees to take the same estate in the land which they take in the personal property.

3. SAME—*words "personal and lawful heirs" are not words of limitation.* A residuary clause giving the residue of the testator's estate, which consists of both real and personal property, in equal shares to his children "and to their personal and lawful heirs," passes a fee to the children, and not merely a life estate with remainder in fee to the "personal and lawful heirs," as such words are not equivalent to "heirs of the body begotten," or other similar expressions used in creating an estate tail.

APPEAL from the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

Appellants filed their bill in the circuit court of Cook county for partition and other relief. Appellees demurred to the bill and the court sustained the demurrer. Appellants electing to stand by their bill, the court entered a decree dismissing it for want of equity, from which this appeal is prosecuted.

The real estate sought to be partitioned is forty acres of land in Cook county. Henry Meader was the owner in fee of said land at the time of his death, which occurred in 1867. He left a will disposing of his estate, which was executed in 1864, and is as follows:

"I, Henry Meader, of Manchester, Dearborn county, Ind., be-
ing now well stricken in years (but of sound mind and memory)
and considering at all times the great uncertainty of life, and feel-
ing anxious to prevent any disquietude or litigation about the prop-
erty which I may leave to my heirs at my death, do make this as
my last will and testament, to-wit:

"I will that my funeral expenses and all my just debts be paid
promptly, without any vexation or delay, out of the first moneys
that shall come into the hands of my testatrix or administrator of
my estate.

"I give and bequeath to my ever faithful and beloved wife,
Sarah Y. Meader, the full occupancy and control of all the residue
of my personal and real estate during her lifetime, except as here-
inafter provided. And I also will and direct that my said beloved
wife may and shall at pleasure sell and dispose of any portion of
my personal property as shall best suit her own interest and con-
venience. I repose unlimited confidence in her fidelity and ability,
and prayerfully and hopefully commit her unto the hands of God
as 'unto a faithful Creator.' Amen.

"I give and bequeath unto my very kind son-in-law, Ahira
Smith, and to my most affectionate and dutiful daughter, Matilda J.
Smith, wife of the said Ahira Smith, all my farming utensils, house-
hold and kitchen furniture, and so much thereof at my death as
my said wife can of her own free will and accord conveniently
spare, and the residue at her death.

"The balance of all my estate, both personal and real, I give
and bequeath to my dear children, John Meader, Ezekiel E. Meader,
Henry Meader and Matilda J. Smith, and to their personal and
lawful heirs, share and share alike. (See over on next page.)

"I hereby constitute and appoint my said beloved wife, Sarah Y.
Meader, sole executrix of this my last will and testament.

"In witness whereof I have hereunto set my hand and seal this
sixth day of September, in the year of our Lord 1864.

HENRY MEADER. (L. S.)"

The will was admitted to probate in Cook county De-
cember 5, 1888, and letters of administration with the will
annexed were issued to the testator's daughter, Matilda J.
Smith. The bill alleges that Henry Meader left surviving
him Sarah Y. Meader, his widow, John, Ezekiel E. and
Henry Meader, his sons, and Matilda J. Smith, his daugh-
ter, as his only children and heirs-at-law.

The theory of the bill, which is very lengthy, covering
thirty pages of the abstract, is, that by the will of Henry

Meader his four children each took a life estate in the undivided one-fourth of the land, with remainder in fee to their children.

It appears from the allegations of the bill that the widow died in 1880. John died the same year; Ezekiel E. died February, 1896, Henry died in July, 1900, and Matilda in April, 1901. Appellants are children of these three sons and daughters of the testator or descendants of their children. Henry Meader and wife, Ezekiel E. Meader and wife and Matilda J. Smith and husband conveyed by warranty deed, in 1889, to Anna V. Short the undivided three-fourths of said lands. On the same date the trustee of the estate of John Meader, and his daughter, Henrietta V. Rand, who was the only surviving child of John Meader, executed a deed to the same grantee, purporting to convey the undivided one-fourth of said premises. This latter conveyance was made in pursuance of a decree of court. All these deeds were recorded in the recorder's office of Cook county April 4, 1889, and on that day Anna V. Short executed a deed purporting to convey the whole of said lands to Neziah W. Bliss, John I. D. Westervelt and William A. Arms. The bill further alleges that Bliss, Westervelt and Arms, pretending to be the owners of said lands, caused to be made a plat and subdivision thereof called "Calumet Highlands," and another plat and re-subdivision of Calumet Highlands called "Highland Addition to Longwood." The first plat was acknowledged April 25, 1889, and recorded in the recorder's office January 18, 1891. The last mentioned plat was acknowledged February 12, 1892, and recorded March 10, 1892. A number of lots in these subdivisions were sold to various parties from time to time before this suit was brought. Some of appellees claim to be owners or mortgagees of lots by *mesne* conveyances from Bliss, Westervelt and Arms. The bill prayed that the rights and interests of all parties should be ascertained and declared and conflicting and controverted titles investigated and settled;

that the deeds from the children of Henry Meader, deceased, be decreed to have conveyed only an estate during the respective lives of the grantors, and that the deed made by their grantee, and by all persons claiming through or under her, be set aside as clouds upon appellants' title; that appellants be decreed to be the owners of all of said lands in fee simple, and that dower be assigned therein and partition thereof be made. Some of appellants who were defendants to the original bill filed a short joint and several answer admitting the allegations of the bill, and also filed a cross-bill adopting substantially the allegations of the original bill and praying for the same relief. This cross-bill was answered by the original complainants. No rule was taken upon the other defendants to the cross-bill to answer the same and no further steps were taken under said cross-bill. From the decree of the court sustaining the demurrers and dismissing the bill, complainants in said cross-bill asked and were allowed an appeal. But one record has been filed and the two appeals have been consolidated.

CHARLES F. DAVIES, and JAMES C. LILLIE, for appellants.

CHARLES L. BARTLETT, SHERMAN C. SPITZER, GEORGE I. HAIGHT, SOL ROSENBLATT, and WILSON, MOORE & MC-ILVAINE, (GEORGE C. FRY, and A. L. BENNER, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The question presented for determination by this record is whether the four children of Henry Meader, the testator, by the residuary clause of his will took an estate in fee simple, or whether they took life estates with remainder in fee to the heirs of their bodies.

The will gave the testator's wife a life estate in all his real and personal property, except some specific articles of

personal property, with power to sell and dispose of any portion of the personal property that should suit her convenience. The residuary clause is as follows: "The balance of all my estate, both personal and real, I give and bequeath to my dear children, John Meader, Ezekiel E. Meader, Henry Meader and Matilda J. Smith, and to their personal and lawful heirs, share and share alike."

Appellants contend that the words "personal and lawful heirs," as used in the will, were intended to mean "heirs of the bodies," which, under the statute *de donis,* would have created an estate tail, and which the sixth section of our statute on conveyances converted into a life estate in the children of the testator, with remainders in fee simple absolute to the person or persons to whom the estate tail would, on the death of the first devisee, pass, according to the course of the common law, by virtue of such devise. There could be no question that if the word "personal" were omitted from the will the estate conferred upon the children of the testator would have been a fee simple. The will before the court in *Deemer* v. *Kessinger,* 206 Ill. 57, gave certain real estate to the testator's son "and to his lawful heirs." In a codicil to the will the testator stated that he desired to change the will to read that his son should have "use, benefit and control" of the lands "during his lifetime only, and that at his death said lands shall go to his lawful heirs." The court said (p. 61) : "In legal effect the devise to William L. Deemer contained in the codicil and that contained in the will are the same,—that is to say, a freehold estate by each of said provisions is given to William L. Deemer and an estate in fee is limited immediately to his lawful heirs, and the fee to the premises, under the codicil as well as under the will, vested in William L. Deemer. * * * The words 'nearest,' 'legal,' 'lawful,' or similar expressions preceding the word 'heirs,' without other words of limitation, in a devise, do not convert the word 'heirs' from a word of limitation to that of purchase." If the word

"personal," as used in the will, is to be construed as a limitation to the heirs of the bodies of the testator's children, then it would have to be held that they took only a life estate; but if the words "personal and lawful heirs" were intended by the testator to mean the heirs, in general, of his children, then said children took an estate in fee.

Counsel say in their briefs they have been unable to find any case where the word "personal," as used in this will, has been construed. As the word has no technical legal meaning, the question here involved is one of construction.

We cannot agree with counsel for appellants that as used in this will the words "personal and lawful heirs" are equivalent to or synonymous with "heirs of the body begotten." It is true, as said by Preston, (vol. 2, p. 503) : "It is not necessary that the words of procreation, descriptive of the person by whom or on whose body the heirs inheritable under the entail are to be begotten, shall be in the clause of immediate gift to the donee. It will be sufficient that on the collective sense of the will or deed it appears that by the heirs described in that clause, heirs of the body were intended." It is necessary to the creation of an estate tail that in addition to the word "heirs," words of procreation to indicate the body from which the heirs are to proceed must be used or necessarily implied from the language of the will. 1 Washburn on Real Prop. sec. 199; Blackstone's Com. book 2, p. 115; *Butler* v. *Huestis,* 68 Ill. 594; *Metzen* v. *Schopp,* 202 id. 275.

In *Lehndorf* v. *Cope,* 122 Ill. 317, it was said that while the ordinary form was to make the gift or grant to the donee or grantee "and the heirs of his body," or "heirs upon her body to be begotten," or "upon her body to be begotten by A," there is no especial efficacy in these forms of words, and an estate tail, at common law, may be created by equivalent words "which, by necessary implication, describe and designate the particular body out of which the heir should proceed." It has accordingly been held that in a

will a devise to one "and his offspring," "his lineal descendants," "his issue," "his seed," and similar expressions in the connection used, were equivalent to the words "heirs of the body begotten." The reason for such construction was, that the words were held to indicate the bodies out of which the heirs should issue, and clearly no straining of words was required in so construing the language used. In our opinion "personal and lawful heirs" no more indicates the bodies out of which the heirs shall issue than if the word "personal" had been omitted. They are no more words of limitation than the word "children" or heirs," without other qualification. In *Leiter* v. *Sheppard*, 85 Ill. 242, a devise to a devisee, "and to her children, heirs and assigns after her," was held to give the fee to the devisee. In *Ryan* v. *Allen*, 120 Ill. 648, it was held that the word "nearest," "next" or "first" prefixed to the term "heirs," without use of other words of limitation, would not vary or affect the devise. See, also, *Silva* v. *Hopkinson*, 158 Ill. 386; *Vangieson* v. *Henderson*, 150 id. 119.

It is contrary to the policy of our law and the spirit of our statute to tie up property and courts are not disposed to adopt a construction that will produce that result, but, on the contrary, where it can be done without violating a settled rule of law, they will adopt the construction that will give an estate of inheritance to the first taker. (*Leiter* v. *Sheppard, supra; Davis* v. *Ripley*, 194 Ill. 399; *Kellett* v. *Shepard*, 139 id. 433; *Strawbridge* v. *Strawbridge*, 220 id. 61; *Dick* v. *Ricker*, 222 id. 413.) In *Butler* v. *Huestis, supra*, it was said (p. 603) : "If we are to interpret wills in the light of precedents, we ought to follow those that are most in harmony with the genius and laws of this country and the manners and customs of its people. We ought rather to be guided by those that would most effectually do justice, and not by such as would give an arbitrary and technical meaning to words never understood or contemplated by the testator; that may defeat all the objects of his beneficence, as mani-

fested by the last solemn act of his life, in disposing of his property to those he may deem most worthy of his bounty."

In the introductory part of the will the testator gives reasons for making the will and disposing of the property "which I may leave to my heirs at my death," and no reference anywhere in the will is made by the testator about leaving property to any other persons than his widow and children. In the residuary clause he disposes of both personal and real estate, and the language used is applicable to both. No estate tail can be created in personal property, and the testator must be held to have intended that the devisees should take the personal property absolutely. The fact that he included real estate in the same sentence of the will, when not otherwise indicated in some other part of the instrument, indicates an intention that the devisees should take the same estate in the land that they were given in the personal property. This, of course, is not conclusive, but is an important circumstance to be considered in arriving at the intention of the testator. In *Leiter* v. *Sheppard, supra,* it was said (p. 247): "The fact that personal estate was comprehended in this residuary clause and was expected by the testator to go, with the shares of real estate in question, to the legatees named, is an indication that an absolute estate was intended to be given them." This language was substantially quoted and applied in *Giles* v. *Anslow,* 128 Ill. 187.

Greater latitude is allowed in the construction of wills than is allowed in the construction of deeds. In the former, effect is to be given to the intention of the testator, and this is to be determined from a consideration of all of the provisions of the instrument. When such intention is ascertained, if not in conflict with some rule of law, it is to be given effect in the construction of the will. In *Blackmore* v. *Blackmore,* 187 Ill. 102, the court said (p. 108): "A technical construction of words and phrases, although *prima facie* the one which should prevail, will not be carried

to the extent of defeating any obvious general intention of the testator, since wills are often prepared by those wholly unacquainted with the precise technical force of legal formulas, and who, from a consciousness of such deficiency, often exert themselves to drag in such phrases wherever they suppose they would probably have been adopted by an experienced draughtsman."

Our conclusion is, from the language used by the testator in his will, that it was his intention to give his four children named, an estate in fee in the real estate, and to so construe the will is not contrary to and does not conflict with any settled rule of law or rule of property. It is unnecessary, therefore, to refer to the question of *laches* discussed by counsel in their briefs.

The decree of the circuit court is affirmed.

*Decree affirmed.*