Continental Illinois National Bank and Trust Company of Chicago, Appellee, v. Gertrude Ann Doud Kelley et al., Appellees.

Appeal of Charles B. Kelley et al., Appellants.

Gen. No. 38,742.

Opinion filed May 19, 1937.

HERMAN A. FISCHER and RAYMOND P. FISCHER, both of Chicago, for appellants.

PACKARD, BARNES, McCAUGHEY & SCHUMACHER, of Chicago, for appellant Jessica Davidson Riely; GEORGE PACKARD, of counsel.

THOMAS H. FISHER, of Chicago, for appellees.

MR. JUSTICE HALL delivered the opinion of the court.

A petition for rehearing was granted in this cause, and after a further review of the record, the court files a new opinion, as follows:

This is an appeal from a decree of the circuit court of Cook county, construing a deed of trust, and directing the distribution of certain income of a trust estate.

On March 1, 1900, David P. Kelley and Sarah Kelley, his wife, conveyed real estate, situated in the city of Chicago, to the Illinois Trust & Savings Bank, in trust, for the purposes set forth in the deed of conveyance. After providing for the maintenance of the property in the matter of the payment of taxes, water rates and other costs in connection therewith, and the renting of the property, and the collections of the rents to be derived therefrom, the deed of trust provides that the trustee is given power to sell and convey the real estate so conveyed, and to invest and reinvest the proceeds thereof, provided that the trustee may not sell, convey or dispose of the same during the joint lives of Addison D. Kelley and Paul D. Kelley, sons of the grantors, without the consent in writing of these sons, and it is further provided that in case of the death of either of the sons, during the lifetime of the survivor, the trustee may not sell or convey the property without the consent of the survivor. It also provides for the payment of $200 per month to each of the grantors during their lives, or during the life of the survivor. Sections 3 and 4 of the deed are as follows:

"3. During the existence of the trust hereby created, said trustee shall apply and pay the net rents, issues and profits arising from the property hereby conveyed or the net rents, interest, income and return upon any substituted investment (subject, however, to the contingencies hereinafter provided for and set

forth) during the joint lives of Addison D. Kelley and Paul D. Kelley, sons of the party of the first part, in quarter-yearly installments, or at more frequent intervals if practicable, to each, the said Addison D. Kelley and Paul D. Kelley (in person and not upon any written or verbal order nor upon any assignment or transfer by them, or either of them) one-half of the net income arising from said property, and upon and after the death of either thereof, shall pay in like manner to his widow, if any (in person and not upon any written or verbal order nor upon any assignment or transfer by her) his (her deceased husband's) proportion of said income, until her death or remarriage, or until the end of twenty-one years after the death of the last survivor of them, said Addison D. Kelley and Paul D. Kelley, which ever shall first occur, and upon the death of either, the said Addison D. Kelley or Paul D. Kelley, leaving no widow him surviving, or in case he shall leave a widow him surviving, upon her death or remarriage within the period of twenty-one years above mentioned, shall pay in like manner to his heirs-at-law his proportion of said net income until the termination of this trust.

"4. The income arising from said property shall not be subject to alienation or assignment by said Addison D. or Paul D. Kelley, or either of them, and in case they, or either of them, shall die, leaving widows surviving, such income shall not be subject to alienation or assignment by such widows, or either of them, nor shall such income be subject to be charged, incumbered or in any manner lessened or affected by any act of said Addison D. or Paul D. Kelley, or either of them, in the lifetime of either of them, or by the act of the widows of them, or either of them, in case of the survivorship of such wife or wives. Nor shall same be subject to the payment of his, her or their debts or obligations in any manner of form, nor shall they or

either of them have any vested interest in said income, or any installment thereof, until the same is actually paid over to him, her or them by said trustee, nor shall any payment thereof be anticipated by said trustee, nor shall said income be subject to garnishment or other legal process, but on the contrary shall be free from interference or control of his, her or their creditors, the intent being that said income shall be preserved and held for the personal use, benefit, maintenance and support of said Addison D. and Paul D. Kelley, and their respective widows, or the survivor or survivors of them, upon the terms hereof, and if said Addison D. and Paul D. Kelley, or either of them, shall at any time hereafter attempt to alienate, charge or dispose of their respective shares of said income, or any part thereof, or any interest therein, or if, in the event of survivorship, the widows of them or either of them, shall at any time attempt to alienate, charge or dispose of their respective proportions of said income, or any part thereof, or if by reason of such attempted alienation, charge or disposition, or by reason of his, her or their insolvency, or by reason of any legal proceeding being taken or legal process issued against them, or any, or either, of them, or by reason of any other event happening at any time hereafter, said net income shall, wholly or in part, cease to be personally enjoyed by said Addison D. and Paul D. Kelley, or either of them, or in the event of their survivorship, by their said widows, or either of them, the provisions herein contained for the disposition of said income shall thereupon cease and determine in respect to the proportion thereof so affected, and thereupon said income as to the proportion thereof going to the person or persons whose interest or interests is or are or may be so affected, shall be held by said trustee during all the then residue of the life of the person whose interest is, or may be, so affected, as the case may be, in

the manner following, that is to say: said trustee shall in its absolute discretion and as it shall see fit, pay and apply said income to the personal support, comfort and maintenance or otherwise, as the judgment of the trustee shall approve, for the benefit of the person whose interest shall be so affected, exclusive of all other persons being or claiming to be alienees, grantees, or creditors of such person, and in such event said trustee shall have power to appoint some person as its agent and representative to whom it may pay over said income and such person so appointed shall have full power and authority in his absolute discretion, and as he shall see fit, to so pay and apply said income to the personal support and maintenance or otherwise for the benefit of the person whose interest is so affected; provided, however, that in such event the interest or interests of the remaining beneficiaries of this trust not affected by such attempted alienation, charge or disposition, or by the claim of creditors or by legal proceedings taken, or process issued against the same, shall continue in full force and shall not be affected by the application of the provisions last above set forth in respect to the interests so affected.''

The deed also provides that the trustee shall have the power to borrow money for certain purposes. Section 9 of the trust deed is as follows:

''9. In case said trustee shall borrow money, and mortgage or convey said property, or any substituted investment, for the repayment thereof as aforesaid, it shall have power to pay all necessary and reasonable commissions and expenses, incurred in making such loan, out of the proceeds thereof, or out of the income, rents, issues and profits of said trust estate, as it may deem best, and it shall also have power to pay any and all interest, to accrue upon said loan, out of the income, rents, issues and profits aforesaid, and shall also have power to reserve and set aside, out of the income,

rents, issues and profits of said trust estate, at any and all times during the existence of any such mortgage debt, such proportion or percentage of such income, rents, issues and profits (not exceeding however a sum equal to ten per cent per annum of the principal of all such outstanding loans) as may, in its judgment, be reasonably necessary for the purpose of accumulating a sinking fund for the payment of such loan or loans, and shall have power to invest and reinvest such sums so set aside and reserved, and the income and profits arising therefrom, and to ultimately apply such sinking fund, and the increase and increment thereof, to the repayment and satisfaction of the principal debt or debts secured by mortgage, trust deed or otherwise, as aforesaid. It is the intent and desire of the grantors however, that such sinking fund shall interfere as little as may be practicable with the distribution of the rents and incomes arising from said trust estate to and amongst the beneficiaries hereunder, and it is expressly provided that, at all times during the lives of the grantors, at least twenty-four hundred dollars per annum shall be reserved and taken out of said rents and income, in preference and priority to such sinking fund, said sum so taken out to be applied as provided in paragraph 5 hereof, upon the contingencies therein set forth, otherwise provided in paragraph 3 hereof, and after the death of the grantors a like sum shall be reserved and taken out at all times, so long as either said Addison D. or Paul D. Kelley or any widow (not remarried) or minor child, of either, shall survive, such sum to be distributed as provided in paragraph 3 aforesaid. And if upon repayment of all loans secured upon the trust estate as aforesaid, a surplus shall remain in the sinking fund aforesaid, such surplus be divided amongst, and paid over to, the several parties then entitled to the net income of the trust estate as they shall then exist, in the proportion in which the

rents, issues and profits are divisible at the time such surplus is distributed; provided that the trustee shall in any event be entitled to have, receive and retain out of said sinking fund all proper expenses and disbursements (including a reasonable compensation for its services) incurred, disbursed and earned in and about the handling, investing, reinvesting, caring for, looking after, disbursing and distributing said sinking fund, and the increase and increment thereof.''

Sections 12 and 13 of the trust deed are as follows:

''12. This trust shall terminate and end upon the happening of any of the following contingencies: (a) Upon the death of the survivor of said Addison D. and Paul D. Kelley, if neither leave surviving him a widow or descendants; (b) When and if (at any time subsequent to the death of both said Addison D. and Paul D. Kelley and within twenty-one years after the death of the survivor of them) there shall be *in esse* no lineal descendant of either of them and no widow (not remarried) of either of them; (c) In any event, at the expiration of twenty-one years from and after the death of the last survivor of them, said Addison D. and Paul D. Kelley.

''13. Upon the termination of the trust hereby created at the time and upon the happening of the events set forth in the last preceding clause hereof, or either of them, said trustee shall convey said property by proper instruments of conveyance, to be acknowledged according to law (such conveyance to vest in the grantees a fee simple title, free, clear and discharged of the trusts hereby created) in the following manner and to the following persons, to-wit: (a) If at the time of such conveyance there shall be living and not remarried, widows, and descendants of both said Addison D. and Paul D. Kelley, then to the widow of each an undivided one-sixth, and to the children or descendants of each, an undivided two-sixths, as tenants

in common; (b) If at said time widows of both said Addison D. and Paul D. Kelley shall be living and not remarried, and no children or descendants of either shall then be living, then to each of said widows an undivided one-half; (c) If at said time no widow of either shall be living and unmarried, then to the heirs at law of each an undivided one-half as tenants in common, or if the heirs at law of both be the same persons, then to such persons the whole thereof; (d) If at such time there be living and not remarried the widow of one thereof only, and also a child or children or descendants of the deceased husband of such widow, then to such widow one-sixth, and to such child, children or descendants, two-sixths, as tenants in common, and to the heirs at law of the other, the remaining one-half, as tenants in common; (e) If, at such time, there be living, and not remarried, the widow of one only, and no children or descendants of her deceased husband, then to such widow one undivided half of said estate, and to the heirs at law of the other the remaining half thereof, as tenants in common.''

We have quoted these sections of the trust agreement in full for the reason that a complete understanding of the issue involved cannot be had without doing so. It is apparent that this trust indenture was intended to and did create a spendthrift trust for the benefit of certain persons mentioned.

The Continental Illinois National Bank & Trust Company, which had become trustee of the trust estate by reason of certain bank consolidations, filed a petition in the circuit court of Cook county, in which the terms of the trust agreement are recited. In this petition it is alleged that at the time of the execution and delivery of the indenture of trust, Addison D. Kelley and Paul D. Kelley, the sons of the grantors, in whose interest principally the trust was created, were both alive and were bachelors; that thereafter Paul D.

Kelley married but once and then to Jessica S. Kelley, and that Addison D. Kelley married but once and then to Gertrude Ann Doud Kelley; that on October 25, 1900, David D. Kelley died, leaving a will and surviving him, as his only heirs and next of kin, Addison D. Kelley and Paul D. Kelley, his sons, and Sarah J. Kelley, his widow, and that by the terms of this will, all of his estate was devised to Sarah J. Kelley, his wife, absolutely, in the event that she survived him, and that she did survive him; that on May 4, 1913, Paul D. Kelley died, leaving surviving as his only heirs at law and next of kin, Jessica S. Kelley, his widow, Addison D. Kelley, his brother, and Sarah J. Kelley, his mother; that Paul D. Kelley left a will, by the terms of which his property was devised and bequeathed to his widow, Jessica S. Kelley; that on October 14, 1923, Addison D. Kelley died, leaving a will, by which he made sundry devises, none of which referred to or included any interest of Addison D. Kelley in the trust estate, and that all the residue of his property was devised and bequeathed to Gertrude Ann Doud Kelley, his widow, who still survives, and is unmarried; that on January 17, 1926, Sarah J. Kelley died intestate, leaving as her surviving heirs at law and next of kin, Anne L. Meadowcroft, her niece, Elizabeth Wood McLean, her grandniece, and Ellery L. Wood and Augustus R. Wood, her grandnephews, and that thereafter letters of administration on her estate were issued to Anna L. Meadowcroft; that on January 15, 1923, the real estate conveyed by the trust deed to the trustee was sold by the trust company, and that Addison D. Kelley, the then surviving son of Sarah J. Kelley, consented to such conveyance by signing the deed, that the trustee invested the proceeds in income bearing securities, and that the payments provided to be made by the trustee to the persons therein mentioned, had been made as provided in the

trust deed; that on February 20, 1931, Jessica S. Kelley, the widow of Paul D. Kelley, died testate, leaving Jessica A. Davidson, her daughter by a former marriage, as her only heir at law, and that by the terms of her will, all of her property was devised and bequeathed to Jessica A. Davidson; that after making the payments provided for in the trust deed, there remained in the hands of the trustee on February 20, 1931, the date of the death of Jessica S. Kelley, the sum of $7,172.62 in cash, such sum being accumulated income from the trust estate which was then held undistributed by the trustee; that it, the trustee, intends to and will pay to Gertrude Ann Doud Kelley her proportion of said sum, and that Jessica S. Kelley would be entitled to the same amount as Gertrude Ann Doud Kelley, were she alive; that a question has arisen as to whether the estate of Jessica S. Kelley is entitled to any portion of her distributive share in the income of this trust estate, or whether it should be distributed to those who are referred to as the heirs at law of Paul D. Kelley, deceased. The bill prays that, because of such conflicting claims, that the court construe the trust deed, and that the trustee be advised as to its legal duties in the premises.

In addition to Gertrude Ann Doud Kelley, widow of Addison D. Kelley, and Jessica A. Davidson, daughter by a former marriage of Jessica S. Kelley, deceased, Annie L. Meadowcroft, Elizabeth Wood McLean, Ellery L. Wood and Augustus Rawson Wood, heirs and next of kin of Sarah J. Kelley, deceased, Charles B. Kelley, George E. Kelley, Nettie A. Dickerman, David D. Kelley, Harriet E. Jones, Abbie C. Wallace and Mary Kelley Schufeldt, first cousins of Paul D. Kelley, together with husbands and wives of certain of these cousins, are made parties defendant to the bill. Answers were filed by all of these persons, except Gertrude Ann Doud Kelley, who entered her appearance in the cause.

The cause was referred to a master, who made a report, and thereafter and after a hearing on the report, the court entered a decree in which it found the salient facts to be substantially as set forth in the petition. In addition the court found, from evidence adduced, that at the time of the entry of the decree, the value of the trust estate was approximately $240,000; that up until the date of the death of Jessica S. Kelley, the trustee had made distributions of the income of the property in monthly instalments to the persons entitled thereto, and that at the time of the death of Jessica S. Kelley, the sum of $7,172.62 in cash had accumulated and was undistributed; that at that time, one-half of such accumulated income, less a pro rata share of certain taxes and other expenses of administration, were payable to Gertrude Ann Doud Kelley, and was paid to her, and that the other half of such sum is still held by the trustee, for the reason that the question has arisen as to whether or not the amount held should be paid to the estate of Jessica S. Kelley. The court also found that interest had accrued on this last mentioned sum; that the net income from the trust estate is apportionable as of and to the date of the death of Jessica S. Kelley, and that a one-half share of all said prior accruing income (including both that which was collected and that which had accrued and which was uncollected) subject to proper expense deductions, was the property of said Jessica S. Kelley at the moment of her death, and is payable by the trustee to the defendant, Jessica A. Davidson, as the sole devisee under the will of Jessica S. Kelley; that as to the proportionate share of Paul D. Kelley of the income of the trust estate accruing after the death of Jessica S. Kelley, that the designation "his (i. e., Paul's) heirs at law," be taken to mean the heirs of Paul D. Kelley, including his mother, Sarah J. Kelley, and his brother, Addison D. Kelley, but excluding his widow, Jessica S. Kelley; that the "heirs at law" in the income of the trust ac-

cruing after the death of Jessica S. Kelley, were interests in real estate, and were vested at the time of Paul D. Kelley's death, and that Paul D. Kelley's "proportionate share" (i. e., one-half share of the net income of the trust) is payable by the trustee as follows: One-third to Annie L. Meadowcroft, one-ninth each to Ellery L. Wood, Elizabeth Wood McLean and Augustus Rawson Wood, and one-third to Gertrude Ann Doud Kelley, and that each of such persons has a vested interest in the fixed proportion of the income. The court found that the other defendants had no interest in the trust estate. It was ordered and decreed that the income be paid to the persons mentioned in the various proportions, as above set forth, and found by the court to be due and owing. The court also found that it would be premature to determine the corpus of the estate. It is evident that the trial court considered only the interest of Paul D. Kelley, his widow and heirs at law, and determined that future contingencies should not be anticipated. To both the latter conclusions, we agree.

Separate appeals from the decree are here prosecuted by Jessica A. Davidson and by certain others who claim to be the heirs at law of Paul D. Kelley. On the part of Jessica A. Davidson, it is contended that the terms "heirs at law" in the trust agreement should be construed as referring to the heirs at law of Paul D. Kelley at the date of his death, and that since the property devised by his will to Jessica S. Kelley is in the nature of personal property, it should go according to the statute of descent to her deceased mother, the widow of Paul D. Kelley, and to Jessica A. Davidson as her devisee. She insists that Jessica S. Kelley, widow of Paul, her mother, had a vested right in the income collected but undistributed at the time of her death, and in the income accrued though not collected. This latter she also claims. The theory of Charles B.

Kelley and the other collateral heirs of Paul D. Kelley, appellants, is that the words "heirs at law," as used in the deed of trust with reference to both the income and the corpus of the trust estate, were intended by the grantors in the deed of trust to refer to the nearest living relatives of Paul D. Kelley at the date fixed for distribution, that is to say, those who would have been his heirs if he had died at the time appointed for distribution. As to Annie L. Meadowcroft and the other heirs at law of Sarah J. Kelley, appellants, it is contended that the words "heirs at law" in the deed of trust should be construed as referring to the heirs at law of Paul D. Kelley at the date and time of his death, excluding Paul D. Kelley's widow, and that these last mentioned persons have succeeded to the rights of such "heirs at law," all of whom had died before the date fixed for distribution. There is no question of fact raised, and as stated, nothing is involved here but the disposition of the interest in the trust of Paul D. Kelley, who died on May 4, 1913, and left as his heirs at law Jessica S. Kelley, his widow, Sarah Kelley, his mother, and Addison D. Kelley, his brother, as set forth in the bill and found by the decree. Here it is pertinent to call attention to the fact that the trust deed provides specifically that neither the sons, nor their widows, should "have any vested interest in said income until it was actually paid over to them." In stating the intention of the grantors, with respect to the trust, the following recitation appears in the trust indenture, and bears repetition: "The intent [of the trust indenture] being that said income shall be preserved and held for the personal use, benefit, maintenance and support of said Addison D. and Paul D. Kelley, and their respective widows, or the survivor or survivors of them, upon the terms hereof, and if said Addison D. and Paul D. Kelley, or either of them, shall at any time hereafter attempt to alienate, charge or

dispose of their respective shares of said income, or any part thereof, or any interest therein, or if, in the event of survivorship, the widows of them or either of them, shall at any time attempt to alienate, charge or dispose of their respective proportions of said income, or any part thereof, or if by reason of such attempted alienation, charge or disposition, or by reason of his, her or their insolvency, or by reason of any legal proceeding being taken or legal process issued against them, or any, or either of them, or by reason of any other event happening at any time hereafter, said net income shall, wholly or in part, cease to be personally enjoyed by said Addison D. and Paul D. Kelley, or either of them, or in the event of their survivorship, by their said widows, or either of them, the provisions herein contained for the disposition of said income shall thereupon cease and determine in respect to the proportion thereof so affected, and thereupon said income as to the proportion thereof going to the person or persons whose interest or interests is or are or may be so affected, shall be held by said trustee during all the then residue of the life of the person whose interest is, or may be so affected, as the case may be, in the manner following, that is to say: said trustee shall in its absolute discretion and as it shall see fit, pay and apply said income to the personal support, comfort and maintenance or otherwise, as the judgment of the trustee shall approve, for the benefit of the person whose interest shall be so affected, exclusive of all other persons being or claiming to be alienees, grantees, or creditors of such person, and in such event said trustee shall have power to appoint some person as its agent and representative to whom it may pay over said income and such person so appointed shall have full power and authority in his absolute discretion and as he shall see fit, to so pay and apply said income to the personal support and maintenance or

otherwise for the benefit of the person whose interest is so affected.''

As stated, the record shows that Paul D. Kelley made and executed a will dated September 29, 1909. By the terms of this will he devised and bequeathed all his property and ''all the property, income, right or benefit of every sort, kind or description of which I have or may have the right to dispose of, or name the beneficiary of'' to his wife, Jessica S. Kelley, or that in the event that she predeceased him, to Jessica Alward (now Jessica A. Davidson) daughter of his wife by a former marriage. Jessica S. Kelley executed a will dated February 25, 1929, by the terms of which she willed and bequeathed all her property to Jessica A. Davidson, her daughter.

From a careful reading of the trust indenture, we arrive at the conclusion that it contains three outstanding provisions which are pertinent to the inquiry here, to wit: (1) Neither of the sons of the grantors for whose provisions the trust is created, nor their widows, nor any beneficiary thereunder, acquired any vested interest in the trust fund provided for until the same was actually paid over to them. (2) It is provided that neither of said sons, nor in the event of the death of either, their widows shall have any enforceable interest in the trust created, nor in the funds derived therefrom, should they alienate, or attempt to alienate, their respective proportions of the income. (3) It is provided in the deed of trust that ''upon the death of either, the said Addison D. Kelley or Paul D. Kelley, leaving no widow him surviving, or in case he shall leave a widow him surviving, upon her death or remarriage within the period of twenty-one years above mentioned (21 years after the death of the survivor of the two sons), the trustee shall pay in like manner to his heirs at law his proportion of said net income until the termination of this trust.''

In view of the fact that by the terms of the indenture of trust, neither Paul D. Kelley, nor his widow, acquired any vested interest in any portion of the trust fund until the same was actually paid over, and of the further fact that by their wills they attempted to alienate their prospective rights in the fund created, there might be some doubt as to whether or not Jessica A. Davidson has any right whatever in the proportion of the fund accumulated and undistributed at the time of her mother's death, if it were not for the fact that, as shown by the bill, this fund was accumulated, due and owing and should have been paid by the trustee to Jessica S. Kelley during her lifetime. As to the last proposition, we can arrive at no other conclusion than that the makers of the indenture of trust intended that the term "heirs at law" of Paul D. Kelley was intended to and does mean the heirs at law as of the date of his death, and that his widow was intended to be and was excluded from this class.

In *McGinnis v. Campbell*, 274 Ill. 82, a husband by his will, devised a life estate in his real and personal property to his widow, and it provided that upon the death of his wife, another person should have a life estate in the property, both real and personal, and that upon the death of this other person and the wife of the testator, the estate, both real and personal, should go to the legal heirs of the testator "at the time of my decease." The testator died in 1898, and the widow died in 1907, leaving a number of collateral kin of her blood as her heirs. It was contended that the widow inherited as an heir of the testator, and that the widow's collateral heirs inherited from her. In holding against such contention, the court said:

"It is not contrary to law or public policy to devise an interest in the fee to one who has been given a life estate in the premises, and where a devise is to the testator's heirs it would *prima facie* include all heirs;

but this technical construction of the word 'heirs' will give way to the intention of the testator if it appears from the language of the will that it was not intended to include all persons who would answer that description but only to a class of heirs. (*Blackmore v. Blackmore*, 187 Ill. 102; *Black v. Jones*, 264 Ill. 548.)''

In *Smith v. Winsor*, 239 Ill. 567, the court had before it the construction of a will by which certain property was devised by the testator to his wife for life, with power to dispose of such property by deed, and to reinvest or loan the proceeds of the sale thereof, or to use the same for the comfort or advantage of the wife, or for charitable purposes, with the provision that the remainder, if any, should descend to the heirs at law, as provided by the Illinois statute of descent. In addition to the above, the will provided that if the wife did not survive the testator, then the estate should descend to the testator's heirs at law under the Illinois statute of descent. The wife died a short time after the death of the testator, and the wife's heirs claimed through her a one-half interest in all the real estate owned by the testator at the time of his death. The claim of these heirs of the wife was based upon the contention that the words "heirs at law" in the testator's will, included his widow. The court there held that the words "heirs at law," meant heirs of his blood. From the statement of the case made by the court, we conclude that the will in this case provided for two contingencies: one, the testator surviving the wife, and the other, the wife surviving the testator. In its opinion, the court said:

"It has frequently been held by this court that the word 'heirs' in a will does not necessarily have a fixed meaning. It may mean children. If it may mean children, it may also, where there are no children, mean some other one class of heirs (not including all the heirs,) if the context of the entire will plainly shows

such to have been the purpose of the testator. In the construction of a will greater latitude is allowed than in the construction of a deed. (*Webbe v. Webbe,* 234 Ill. 442,) and while, as above stated, the technical meaning of the word is the one which *prima facie* should prevail, yet such meaning will not be given effect to the extent of defeating an obvious general intention of the testator. (*Blackmore v. Blackmore,* 187 Ill. 102; *Johnson v. Askey,* 190 Ill. 58.) 'Heirs' and 'heirs-at-law' are in a legal sense the same.''

In our opinion the decree of the court ordered the distribution of the income of this trust estate in accordance with the intent of the creators of the trust. Therefore, it is our opinion that the decree should be, and it is, affirmed.

*Affirmed.*

Denis E. Sullivan, P. J., and Hebel, J., concur.