Continental Illinois National Bank and Trust Company of Chicago, Appellee, v. Gertrude Ann Doud Kelley et al., Defendants. Elizabeth Wood et al., Appellants.

Gen. No. 44,133.

120

Opinion filed January 5, 1948.   Rehearing denied January 21, 1948.   Released for publication January 27, 1948.

THOMAS H. FISHER, of Chicago, for appellants.

DEFREES, FISKE, O'BRIEN & THOMSON, and MAYER, MEYER, AUSTRIAN & PLATT, all of Chicago, for appellee; VINCENT O'BRIEN, CARL MEYER and HERBERT A. FRIEDLICH, all of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

This appeal is from a decree entered by the circuit court of Cook county on December 12, 1946, in favor of plaintiff and against defendants.

The original proceeding was instituted November 9, 1931, by the plaintiff, as trustee, for the construction of paragraphs 3 and 13 of the trust indenture of David Kelley and Sarah J. Kelley, his wife, dated March 1, 1900. Upon a hearing of the complaint, all of the parties being before the court, the court construed the trust indenture by its decree of November 30, 1935. This decree defined the interests of the defendants in the income of said trust so created, and declined to construe paragraph 13 of the trust indenture relating to the corpus of the estate on the stated ground that such determination would then be premature. The decree reserved jurisdiction "to enter such further orders or directions as may from time to time be necessary or expedient in the proper administration of said trust estate, and in the payment and manner of payment of said attorneys' fees, and for the protection of any of the rights of the parties hereto except as to the matters herein expressly adjudicated." That decree was affirmed by this court, 290 Ill. App. 361.

On October 18, 1940, plaintiff filed its petition, alleging the death of some of the parties in interest and asking for the construction of paragraph 13 of the trust indenture, bearing upon the question of the distribution of the corpus of said trust. It also prayed that the administration of said trust estate by petitioner and its acts, doings and transactions in the premises may be ratified, approved and confirmed, and that a reasonable amount be fixed and paid out of said trust estate to petitioner for its fees, costs, expenses and attorneys' fees. All of the surviving parties in interest were brought before the court, and issue was joined.

On June 26, 1942, plaintiff, as trustee, filed its report and account in this cause, in which it set up the amount of the principal on hand, as well as the income and disbursements. Objections were filed to said report, and on March 22, 1943, a stipulation was filed, signed by all of the parties except the defendants appealing and defendant Anne L. Meadowcroft, which provided that the defendants signing the stipulation withdraw their objections; that the account be approved upon the trustee crediting to the principal account the sum of $20,000 and the interest account in the sum of $5,000; that the trustee be permitted to withdraw from the trust estate for its own account Food Products Building Corporation General Mortgage Income Bonds in the amount of $20,000; that the account otherwise be approved by appropriate order of the court; and that in the event any of the parties not joining in the stipulation succeed in their objections to said account, that as to any amount surcharged to the trustee over and above the amount of $25,000, the parties signing the stipulation transfer and assign their proportionate interest in the amount of such surcharge to the trustee in its individual capacity, and waive any and all interest in and to the amount of any such surcharge. With the stipulation plaintiff filed its petition asking the approval of the stipulation and that the objections to the

trustee's account, of those not joining in the stipulation be referred to a master for hearing. On the same day an order was entered approving the stipulation and referring the pending objections to a master.

On September 20, 1943, the court entered a decree construing paragraph 13 of the trust indenture and adjudging that said defendants had no interest in the corpus of the trust; that their interest was only in the income; reserved jurisdiction to determine the objections to the trustee's report, pending before the master, and reserved jurisdiction to enter any other and further order as may be necessary for the protection of any of the rights of the parties hereto, except those matters specifically adjudicated in said decree.

On January 25, 1945, defendants filed their motion for partial summary judgment, in which they asked that a summary judgment be entered against the trustee because securities other than said Food Products bonds, purchased by the trustee from itself resulted in loss of principal and income to the trust estate. On January 26, 1945, the court, on the application of the trustee to have its account approved, entered an order reciting that defendant Anne Meadowcroft disclaimed any further interest in these proceedings and withdrew any objections heretofore filed by her to said account, that said report and account were ordered approved as to defendant Anne Meadowcroft, and deferring a ruling on the remaining objections of the other defendants to said final report and account and deferring a ruling upon the motion for partial summary judgment. The trustee filed its answer to this petition for partial summary judgment.

On December 3, 1945, defendants filed a second motion for partial summary judgment, setting up further transactions of self-dealing by the trustee and asking for judgment for the items set up in the motion claimed to have resulted in loss of principal and income. An answer was filed to the second motion for partial summary judgment. On February 6, 1946,

upon a hearing on the application for summary judgment, the court entered a decree finding that the defendants, Elizabeth Wood, Augustus Rawson Wood, and the Trust Company of Chicago, as trustee of the Ellery L. Wood Trust, are each entitled to receive 1/18th of the entire net income of the trust during the entire period from February 20, 1931, to the termination of the trust on June 30, 1940; that during said period the "Trustee (or its predecessors) breached its said trust" by self-dealing in investments, in that it purchased certain investments from itself, which said investments resulted in substantial losses to said trust, and that said trustee is liable and should be surcharged with the amount of the same with interest at 5 per cent on each of the various items and for the payment of interest thereon. The decree found the total loss of principal to the trust estate, resulting from said dealings, to be $48,285.43, and that said objecting defendants were entitled to a partial summary judgment against the trustee as set forth in said decree. It directed the payment to each of $1,339.15 on account of income losses as their proportionate share. The court by its decree retained jurisdiction to enter such further orders as may be necessary.

On March 4, 1946, the amount required to be paid by said summary judgment was tendered in open court, which tender was refused and the tender ordered noted of record.

On June 12, 1946, a third motion for partial summary judgment was filed by said defendants, in which it was sought to surcharge to the trustee compensation paid to itself during the period from February 20, 1931, to June 30, 1940, arising out of the self-dealing in the purchase of securities of a face value of $86,500, and prayed for a partial summary judgment for said amount together with interest.

In the interim, the appeal which had been taken from the decree of the circuit court, entered on September 20, 1943, was by stipulation of the parties, in-

cluding these defendants now appealing, dismissed "with prejudice." The parties had entered into a settlement involving the distribution of the corpus of the estate, which was consummated about December 1, 1943. The entire corpus of the estate was distributed in accordance with the settlement agreed upon, and a release was executed by each of the defendants, the releases reciting that "said payee hereby acknowledges that said sum of money is received by her in full settlement and discharge of the undersigned's claim to the principal and principal accretions of the trust created by an indenture of the trust dated March 1, 1900, and executed by David Kelley and Sarah J. Kelley, and in consideration of the aforesaid sum of money the undersigned payee does hereby release and discharge each of said payors from any and all claims and demands, actions and causes of action, in favor of the undersigned against said payors or any of them." The payors mentioned in these releases were the other beneficiaries in the trust estate.

On December 12, 1946, the court entered a decree which found that the decree entered September 20, 1943, is *res adjudicata* against the claims of these defendants to be reimbursed for any portion of the principal losses and barred them from claiming any part of the principal or corpus or reimbursement on account of said principal losses in said trusts; that the trustee was not guilty of grave moral turpitude, nor did it deliberately misappropriate trust property for its own profit and gain, nor did it deliberately and intentionally, or with gross negligence, cause losses to the principal of said trust, but it did in good faith render extensive and valuable services to said trust and had made good the losses, with interest, and, therefore, its compensation should not in any manner be disturbed. It overruled the objections of these defendants to the final account of the trustee, and the said account was approved. It further decreed

the payment of $350 for fees to the guardian *ad litem.* It denied the petition of the defendants for the allowance of fees and expenses in the prosecution of their objections to the account, and allowed to the objecting defendants $15.25 as costs. It is from this decree the present appeal is prosecuted.

These proceedings have been pending for sixteen years and have run the full gamut of hearings before master, court, two appeals to this court, one petition for leave to appeal to the Supreme Court, which was denied, and now here, again on a third appeal, all directly chargeable to the reservation of jurisdiction contained in the first decree entered in this cause on November 30, 1935, to pass upon and supervise the administration of the trust by the trustee, in a proceeding for the construction of a trust agreement, a provision we regard of serious doubtful propriety and legality. *State ex rel. McManus v. Muench,* 217 Mo. 124. Because it has not been challenged in this proceeding, we do not pass upon the legality of such a reservation of jurisdiction.

██ We agree with the contention of the trustee that the services rendered by these defendants, involved in the objections to the final report and account, and the motions for summary judgment, were not the type of service which entitles these defendants to the allowance of attorneys' fees within the rule stated in *First Nat. Bank v. LaSalle-Wacker Bldg. Corp.,* 280 Ill. App. 188. The other beneficiaries were not interested in prosecuting objections to the final report and account. They had settled with the trustee and had withdrawn their objections. The principal part of the services for which attorneys' fees are claimed had to do with the recovery of principal losses incurred by the trustee in the recovery of which by the decree of September 20, 1943, the defendants were adjudged to have no interest in and no right to share in. The appeal from that decree, as already noted,

was dismissed with prejudice by stipulation of the parties. The effect of such dismissal was to make the decree binding and operative as though no appeal had been taken. These defendants, therefore, cannot claim for services rendered resulting in a recovery in a subject matter in which they were decreed to have no interest, and is not such a "common fund" in which all beneficiaries would participate. *Wilson v. Clayburgh*, 215 Ill. 506, 507; *Royal Neighbors of America v. Chicago Title & Trust Co.*, 297 Ill. App. 80, are opposed to the type of claim for fees in the instant case.

Defendants urge that the chancellor erred in allowing the trustee compensation for the purchase of the securities involved in the self-dealing transactions, since it had found that the trustee had been guilty of a breach of trust. The trustee, on the other hand, claims the right to such compensation because the court also found in the decree appealed from that the trustee "was not guilty of grave moral turpitude, nor did it deliberately misappropriate trust property for its own profit and gain, nor did it deliberately and intentionally, or with gross negligence, cause losses to the principal of said David and Sarah J. Kelley Trust, but it did in good faith render extensive and valuable services to said Trust and has made good the losses, with interest, and, therefore, its compensation should not in any manner be disturbed."

It is a salutary rule, long recognized, that a trustee may not engage in self-dealing in the performance of its duties as trustee, which results in loss to the trust. To relax this rule would be dangerous to the trust in too many other instances—instances where the trustee may not be in a position to make good the loss. The question of negligence or good faith does not enter into it. As was said by the Supreme Court in *Miles v. Wheeler*, 43 Ill. 123, at p. 126:

"It avails nothing to show that the intentions of the trustee were honest, and that there was no fraud in

fact. It is one of those cases in which the law will not permit a trustee to palter with his own conscience. It shields him from all temptation by the inflexible rule that he cannot buy. The plain and sufficient reason is that the interests of the buyer and seller of the same property are necessarily antagonistic, and the only safe rule is one which absolutely forbids a trustee to occupy two positions inconsistent with each other.''

To the same effect, *Joliet Trust & Savings Bank v. Ingalls,* 276 Ill. App. 445, at p. 450.

In *Magruder v. Drury,* 235 U. S. 106, the Supreme Court of the United States, quoting with approval *Michoud v. Girod,* 4 How. 503, said:

'' 'It therefore prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells.' *Michoud v. Girod,* 4 How. 503, 555.

''It makes no difference that the estate was not a loser in the transaction *or that the commission was no more than the services were reasonably worth.*'' (Italics ours.)

If the transaction results in gain to the trust and no secret profit to the trustee, then no one is in a position to question the self-dealing transaction. But where it does result in loss, even though the loss is made good, the violation of the rule prohibiting a trustee in self-dealing is a breach of its trust, which should also affect the compensation of the trustee involved in the questionable transaction.

In *In re Estate of Busby,* 288 Ill. App. 500 at p. 541 this court said:

"It is not customary to allow compensation to executors who have been negligent or derelict in the discharge of their duties. . . . The executor will, therefore, be surcharged with the amount of commissions with which it has credited itself."

Executors and trustees occupy the same position upon this question.

The decree appealed from is reversed and remanded with directions to surcharge to the trustee the compensation received by it and charged to the income account, based upon the 18 items of purchase of securities in the self-dealing transactions, and in all other respects the said decree is affirmed.

*Affirmed in part, reversed in part and remanded with directions.*

NIEMEYER, P. J., and O'CONNOR, J., concur.